589 A.2d 252

**Phyllis DOROHOVICH, Appellant,**

**v.**

**WEST AMERICAN INSURANCE COMPANY, also known as West American Insurance Company of the Ohio Casualty Group of Insurance Companies, a Corporation; and the Ohio Casualty Group, also known as the Ohio Casualty Group of Insurance Companies, also known as the Ohio Casualty Insurance Company, a Corporation.**

Superior Court of Pennsylvania.

Argued Oct. 25, 1990.

Filed April 3, 1991.

414

John N. Scales, Greensburg, for appellant.

Stephen P. McCloskey, Washington, for appellees.

Before CIRILLO, President Judge, and McEWEN and MONTGOMERY, JJ.

CIRILLO, President Judge:

Phyllis Dorohovich appeals from an order entered on March 26, 1990 in the Westmoreland County Court of Common Pleas granting West American Insurance Company's ("West American") motion for summary judgment. We quash.

On August 31, 1985, Ms. Dorohovich went to Wilson's Service Station to obtain unleaded gasoline for her 1978 Jeep and to fill two gasoline cans with leaded gasoline to be used in her lawn mower. Upon arriving at Wilson's, Ms. Dorohovich parked her vehicle in front of a gasoline pump which dispensed leaded gasoline. Ms. Dorohovich then exited her vehicle, and proceeded to the rear of the jeep to remove the two gasoline cans which remained inside the jeep. While Ms. Dorohovich was in the process of removing two gasoline cans from inside her vehicle, she was allegedly injured when gasoline was sprayed on her by Scott Kasparek, an employee of Wilson's Service Station. Ms. Dorohovich was removing the gasoline cans so that they could be filled with leaded gasoline to be used in her lawn mower; her motor vehicle used only unleaded gasoline. At the time of this incident, Ms. Dorohovich was insured under an automobile insurance policy issued by West American pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"). *See* 75 Pa.C.S. § 1701 *et seq.* Ms. Dorohovich filed a multi-count complaint seeking to recover, under the same policy, uninsured [1] or underinsured motorist benefits,[2] and first party benefits.[3] The claim for uninsured

---

1. **Uninsured motorist coverage**—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles.
   75 Pa.C.S. § 1731(b).

2. **Underinsured motorist coverage**—Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles.
   75 Pa.C.S. § 1731(c).

3. First party benefits are "[m]edical benefits, income loss benefits, accidental death benefits and funeral benefits." 75 Pa.C.S. § 1702.

or underinsured motorist benefits has been submitted to arbitration. West American's motion for summary judgment on the claim for first party benefits was granted and this timely appeal followed.[4]

Initially, in light of the procedural posture of this appeal, we must determine whether the trial court's decision to grant West American's motion for summary judgment on Ms. Dorohovich's claim for first party benefits is a final order for purposes of appeal even though her claim for uninsured or underinsured motorist benefits has been submitted to arbitration.

It is fundamental,

that an appeal will lie only from a final order unless otherwise permitted by statute. A final order is one which ends the litigation or, alternatively, disposes of the entire case.... Conversely, an order is interlocutory and not final unless it effectively puts the litigant out of court....

In ascertaining what is a final appealable order ... we must look beyond the technical effect of the adjudication to its practical ramifications.... The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications.

*Praisner v. Stockner*, 313 Pa.Super. 332, 336–37, 459 A.2d 1255, 1258 (1983) (citations and quotations omitted). Generally, because our courts frown upon piecemeal litigation, "an order dismissing some but not all counts of a multicount complaint is interlocutory and not appealable." *Id.* However, where separate and distinct causes of action have been joined in one complaint, a judgment entered on one or more of those causes of action is final and appealable because it terminates the litigation upon a separate cause of action and puts the litigant "out of court" on that cause of

4. Ms. Dorohovich has also filed suit against Michael Wilson, the owner of Wilson's Service Station, Mobil Corporation, and Scott Kasparek.

action. *Id.,* 313 Pa.Superior Ct. at 341–42, 459 A.2d at 1260. *See Hineline v. Stroudsburg Electronic Supply,* 384 Pa.Super. 537, 559 A.2d 566 (1989) (order dismissing counts of wrongful discharge and intentional interference with contractual relations was final, where claim for breach of fiduciary duty remained). On the other hand, an order dismissing one or more counts of a multi-count complaint which merely sets forth alternate theories of recovery is interlocutory and not appealable because the plaintiff can still proceed to a determination on an alternate theory. *Id.* 313 Pa.Super. at 341, 459 A.2d at 1260. Consequently, the plaintiff is not out of court. *See Danko Development Corporation v. Econocast Corporation,* 369 Pa.Super. 120, 534 A.2d 1108 (1987) (an order dismissing claim based on implied warranty of habitability was not final where claims of negligence, breach of contract, and misrepresentation remained).

We must therefore determine whether an order dismissing a claim for first party benefits is a separate and distinct cause of action or whether it is merely an alternate theory of recovery to the claim for uninsured or underinsured motorist benefits which is currently in arbitration. A cause of action has been defined as: "The fact or facts which give a person a right to judicial relief. The legal effect of an occurrence in terms of redress to a party to the occurrence. A situation or state of facts which would entitle a party to sustain and give him [or her] the right to seek judicial remedy in his [or her] behalf." Black's Law Dictionary 201 (5th ed. 1979).

An order is final if it puts the aggrieved party out of court "on all theories of recovery asserted against a given defendant for a given loss." *Sweeny v. First Baptist Church,* 516 Pa. 534, 539, 533 A.2d 998, 1000 (1987). Alternate theories of recovery are different means to recover the same damages or relief for a single harm. *Garofolo v. Shah,* 400 Pa.Super. 456, 583 A.2d 1205 (1990) (en banc). Separate causes of action seek different relief for different harms. *Id.* As such, if a litigant seeks recovery under alternate theories for a given loss, an order dismissing one

of those theories is not appealable. *Motheral v. Burkhart*, 400 Pa.Super. 408, 583 A.2d 1180 (1990) (en banc); *Danko, supra.* If a litigant, however, requests different relief for different harms, an order disposing of one of those requests is an appealable order. *Motheral, supra. See also Praisner*, 313 Pa.Super. at 341, 459 A.2d at 1260 ("the dismissal of a count alleging damages for breach of an express contract is not appealable if an alternate count seeking to recover the same damages based on quantum meruit remains undecided").

Based upon the foregoing discussion, we will focus upon the loss or losses for which Ms. Dorohovich sought recovery in her multi-count complaint. *Motheral, supra.* West American, pursuant to the instant policy, has promised to pay benefits to Ms. Dorohovich if she sustained injuries arising out of the maintenance or use of a motor vehicle. Ms. Dorohovich has allegedly suffered injuries and West American, pursuant to the contract of insurance, has refused to pay her any benefits. Consequently, Ms. Dorohovich has essentially filed a breach of contract claim against West American to recover benefits allegedly due her under the instant contract of insurance.

In Ms. Dorohovich's claim for uninsured or underinsured motorist benefits she requests $20,000.00 plus costs for losses and damages uncompensated by other insurance. In her claim for first party benefits, Ms. Dorohovich seeks $20,000.00 plus costs for medical expenses, loss of earnings, and impairment of earning capacity. The breach of contract claim for uninsured or underinsured benefits does not specify what damages and losses amount to $20,000.00. However, the gas station employee's conduct which allegedly resulted in Ms. Dorohovich's injuries gives rise to her contractual claim for both first party benefits and for uninsured or underinsured benefits. Moreover, since we find that the losses pled specifically in the claim for first party benefits are the same losses pled generally in the claim for uninsured or underinsured benefits, Ms. Dorohovich can be compensated for those losses through her claim

for uninsured or underinsured benefits which has been submitted to arbitration. Therefore, Ms. Dorohovich is seeking recovery for a single harm under alternate theories; she is not seeking different relief for different harms.

In sum, because both of Ms. Dorohovich's claims seek recovery for a single loss and arise under one insurance policy, the two claims are merely alternate theories of recovery on the contract of insurance. As such, Ms. Dorohovich is not out of court on all theories of recovery and the order granting West American's motion for summary judgment on the claim for first party benefits is interlocutory and must be quashed. *Motheral, supra; Garofolo, supra; Praisner, supra.*

However, even if the instant order were appealable, our review of the merits of the case would lead us to conclude that Ms. Dorohovich is not entitled to recover first party benefits under the instant policy, and that West American's motion for summary judgment was properly granted. Summary judgment is governed by Pennsylvania Rule of Civil Procedure 1035(b), which provides in pertinent part:

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pa.R.C.P. 1035(b). Summary judgment is only appropriate where viewing all the facts in the light most favorable to the nonmoving party and resolving all doubts as to the existence of issues of material fact against the moving party, the moving party is entitled to judgment as a matter of law. *Vaskie v. West American Insurance Company,* 383 Pa.Super. 76, 79, 556 A.2d 436, 438 (1989). Further, "the trial court must accept as true all well pleaded facts in the non-moving party's pleadings, as well as any admissions on file, giving the non-moving party the benefit of all

reasonable inferences which may be drawn therefrom." *Thompson v. Nason Hospital,* 370 Pa.Super. 115, 117, 535 A.2d 1177, 1178, *alloc. granted,* 518 Pa. 642, 542 A.2d 1371 (1988). Because of the consequences that flow from summary judgment, it should be granted "only in the clearest of cases." *Jefferis v. Commonwealth,* 371 Pa.Super. 12, 15, 537 A.2d 355, 356 (1988).

■ The relevant portion of Ms. Dorohovich's insurance policy provides as follows:

> We will pay Basic First Party Benefits to or for a covered person who sustains bodily injury *caused by an accident arising out of the maintenance or use of a motor vehicle.*

(emphasis added). When interpreting the provisions of an insurance policy we are guided by the following:

> The interpretation of an insurance policy is a question of law that is properly reviewable by the court.... In construing the policy we are mindful that "[p]olicy clauses providing coverage are interpreted in a manner which affords the greatest possible protection to the insured.... The insured's reasonable expectations are the focal point in reading the contract language." ... Our object, as is true in interpreting any contract,
>
>> is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument.... Where a provision of a policy is ambiguous, the policy is to be construed in favor of the insured and against the insurer, the drafter of the agreement.... Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Geisler v. Motorists Mutual Insurance Co.,* 382 Pa.Super. 622, 626–27, 556 A.2d 391, 393–394 (1989) (citations omitted); *see also Smith v. United Services Automobile Association,* 392 Pa.Super. 248, 572 A.2d 785 (1990). Ms. Dorohovich contends that there is a genuine issue of material fact as to whether she is entitled to first party benefits pursuant to the instant insurance policy. Specifically, relying upon *Ei-*

*chelberger v. Warner,* 290 Pa.Super. 269, 434 A.2d 747 (1981), Ms. Dorohovich maintains that because she was sprayed with gasoline while retrieving gasoline cans from her vehicle, her injuries arose out of the maintenance and use of an automobile. We disagree and would find that there is no genuine issue of material fact and that West American is entitled to summary judgment as a matter of law.

The purpose underlying the MVFRL "is to provide broad coverage to assure the financial integrity of the policyholder, and ... [it] is to be liberally construed to effectuate that purpose." *Callahan v. Federal Kemper Insurance Co.,* 390 Pa.Super. 201, 207, 568 A.2d 264, 267 (1989). To effectuate this purpose, courts have declined to impose external restrictions upon the rights of claimants. *Id.* Nonetheless, an automobile insurance policy is not designed to provide general liability coverage.

With the above principles in mind, we must determine whether Ms. Dorohovich's injuries "arose out of the maintenance or use of a motor vehicle." The phrase "arising out of the maintenance and use of a motor vehicle" is not defined in the MVFRL. This court, however, has previously looked to the now repealed Pennsylvania No–Fault Motor Vehicle Insurance Act ("No–Fault Act"), 40 P.S. § 1009.101 *et seq.,* for assistance in interpreting the MVFRL. *Huber v. Erie Insurance Exchange,* 402 Pa.Super. 443, 587 A.2d 333 (1991); *Omodio v. Aetna Life and Casualty,* 384 Pa.Super. 544, 559 A.2d 570 (1989). As such, we have interpreted the phrase "maintenance or use of a motor vehicle" to mean the maintenance or use of it as a vehicle, including "occupying, entering into, or alighting from it." *Smith,* 392 Pa.Super. at 252, 572 A.2d at 787 (quoting *Camacho v. Nationwide Insurance Co.,* 314 Pa.Super. 21, 23, 460 A.2d 353, 354 (1983)). *See* 40 P.S. § 1009.103.[5]

5.  Section 1009.103 provided in pertinent part:

    *"Maintenance or use of a motor vehicle"* means maintenance or use of a motor vehicle as a vehicle, including, incident to its mainte-

More importantly, we have required that there be a causal connection between the injuries and the maintenance or use of the motor vehicle. *Id.; Alvarino v. Allstate Insurance Co.*, 370 Pa.Super. 563, 537 A.2d 18 (1988). "While the causal connection need not rise to the level of proximate causation, for purposes of coverage ... there must be some connection, more than mere chance or happenstance between the injuries sustained and the insured vehicle." *McKelvey v. Prudential Property*, 392 Pa.Super. 216, 221, 572 A.2d 769, 771 (1990) (quoting *Schweitzer v. Aetna Life and Casualty Co.*, 306 Pa.Super. 300, 303, 452 A.2d 735, 737 (1982)); *see also Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.*, 403 Pa. 603, 607, 170 A.2d 571, 573 (1961) (" 'arising out of' means causally connected with, not proximately caused by"). In discussing the requisite level of causation, we have stated that

> although the insurance contract does not require the injury to be the proximate result [of the maintenance or use of a motor vehicle] in the strict legal sense of the term, it does not extend to something distinctly remote, although within the line of causation. The claim of responsibility has to be deemed to possess the requisite articulation with the use or operation of the vehicle until broken by the intervention of some event which has no direct or substantial relation to the use or operation [of the motor vehicle.]

*McKelvey*, 392 Pa.Super. at 221–22, 572 A.2d at 771. Accordingly, in determining whether the injury arose out of the maintenance or use of the motor vehicle, we must look to the *"instrumentality used to cause* the injury." *Smith*, 392 Pa.Super. at 252, 572 A.2d at 786 (quoting *Spisak v.*

nance or use as a vehicle occupying, entering into, or alighting from it. Maintenance or use of a motor vehicle does not include:

* * * * * *

(B) conduct in the course of loading or unloading a motor vehicle unless the conduct occurs while occupying, entering into, or alighting from it.

40 P.S. § 1009.103 (repealed) (emphasis original).

*Nationwide Mutual Insurance Co.*, 329 Pa.Super. 483, 387, 478 A.2d 891, 893 (1984) (emphasis original)).

In *Eichelberger*, the claimant, Dava Rice, had run out of fuel on a highway and was being assisted in refueling her vehicle by Harry Eichelberger. *Eichelberger*, 290 Pa.Super. at 274, 434 A.2d at 750. While Mr. Eichelberger was refueling her vehicle, Ms. Rice stepped in front of an oncoming car and was injured. *Id.* This court found that Ms. Rice's negligent act of stepping into the path of an oncoming car was causally connected with the ownership, maintenance or use of her vehicle. *Id.* Without passing upon the propriety of *Eichelberger*, we find that it is distinguishable from the instant case.

The claimant in *Eichelberger* had been stranded on the side of a highway because her vehicle had run out of fuel. Consequently, there was a causal connection, arguably attenuated, between the automobile and her injury. Here, it is undisputed that Ms. Dorohovich's vehicle uses only unleaded gasoline and that although she had stopped at the gas station to obtain gasoline for her vehicle and for her lawn mower, when she was sprayed with gasoline her auto was parked in front of the gasoline pump which dispensed only leaded gasoline. Moreover, Ms. Dorohovich was sprayed with leaded gasoline by the gas station attendant who had retrieved the leaded gasoline pump to fill Ms. Dorohovich's gasoline cans. As stated earlier, the leaded gasoline was to be used not in her motor vehicle, but in her lawn mower. Consequently, Ms. Dorohovich's injuries, at best, arose out of the maintenance and use of her lawn mower, not her motor vehicle.

Additionally, when Ms. Dorohovich was sprayed with the gasoline she was standing outside the rear of her vehicle and was attempting to retrieve the gasoline cans by reaching into the vehicle. This court has, on many occasions, been asked to determine whether an insured's injuries, sustained while loading or unloading a motor vehicle, arose out of the maintenance or use of a motor vehicle. *See Huber, supra; Omodio, supra; Callahan, supra; Martin*

*v. Recker,* 380 Pa.Super. 527, 552 A.2d 668 (1988); *Dull v. Employers Mutual Casualty Co.,* 278 Pa.Super. 569, 420 A.2d 688 (1980). In *Huber,* the appellant was injured while he was loading materials onto his vehicle. *Huber,* 402 Pa.Super. at 443, 587 A.2d at 333. The insurer, relying upon a clause which excluded first party benefits when the insured sustains injuries while loading or unloading a motor vehicle, except while occupying the vehicle, denied Huber's claim. *Id.* This court, finding the insurer's exclusion valid, held that the appellant's injuries, incurred while loading materials onto the vehicle while not occupying the vehicle, did not arise out of the maintenance or use of the motor vehicle. *Id.,* 402 Pa.Superior Ct. at ——, 587 A.2d at 335. *Cf. Omodio, supra* (exclusion denying coverage for *all* injuries sustained while loading or unloading a motor vehicle, regardless of whether the injuries arose out of the maintenance or use of the motor vehicle, held invalid); *Callahan, supra* (same); *see also Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984) (setting forth criteria for what constitutes occupying a motor vehicle).

Here, unlike *Huber,* there is no specific exclusion which prevents recovery for injuries sustained while loading or unloading a motor vehicle, except while occupying the vehicle.[6] It is clear, however, that Ms. Dorohovich was outside her vehicle attempting to unload the gasoline cans when she was sprayed with gasoline and therefore her injury did not arise out of the maintenance or use of her motor vehicle. *See Huber, supra; Dull, supra* (injuries,

---

**6.** We note that the instant insurance policy contains an exclusion which provides:

We do not provide benefits for bodily injury:

\* \* \* \* \* \*

7. sustained by any person injured as a result of conduct within the course of the business of repairing, servicing or otherwise maintaining a motor vehicle. This exclusion does not apply if the conduct is off the business premises.

Although Ms. Dorohovich claims that this exclusion is void as against policy, since we would find that her injuries did not arise out of the maintenance or use of a motor vehicle, we decline to discuss the validity of this exclusion.

incurred while insured was unloading a boat from the roof of his vehicle, did not arise out of maintenance or use of motor vehicle).[7]

Further, the insureds in *Callahan* and *Omodio* were injured *as a result of* unloading their respective motor vehicles. *See Callahan, supra* (insured injured while lifting bathtub inside the trailer); *Omodio, supra* (insured sustained injury to his lower back while standing inside and loading his truck). Here, Ms. Dorohovich's injuries did not result directly from the act of unloading gasoline cans from her motor vehicle, but rather the act of a third party—the gas station attendant. As such, Ms. Dorohovich's injuries were caused by a source which was external to the vehicle, not the vehicle itself. *See Smith, supra; Alvarino, supra; Schweitzer, supra.*[8] Therefore, were we to address the instant issue, we would conclude that the requisite causal connection between the maintenance or use of the motor vehicle and Ms. Dorohovich's injuries was not present, and

7. In Judge McEwen's Concurring and Dissenting Opinion, he, relying upon *Omodio,* concludes that " 'loading or unloading' a vehicle is within the certain embrace of the MVFRL phrase 'maintenance and use' of a vehicle." The appellant in *Omodio* "sustained an injury to his lower back while standing *inside* and loading his truck." *Omodio,* 384 Pa.Super. at 546, 559 A.2d at 571 (emphasis added). We, like the court in *Huber,* find that *Omodio* stands for the proposition that an exclusion which prevents recovery for *all* injuries incurred while loading or unloading a motor vehicle, whether or not those injuries arose out of the maintenance of a motor vehicle, is invalid. *Huber,* 402 Pa.Super. at 449, 587 A.2d at 335. *Omodio* does not stand for the proposition that *all* injuries incurred while loading or unloading a motor vehicle arise out of the maintenance or use of a motor vehicle. *See id.; Callahan,* 390 Pa.Super. at 208, 568 A.2d at 267, ("the *Omodio* court found that occupying and unloading a motor vehicle fits within the meaning of 'maintenance and use' as specified in § 1712 of the MVFRL;"); *Omodio,* 384 Pa.Super. at 549, 559 A.2d at 573 ("Whether ... *all* persons injured in the course of loading or unloading a motor vehicle—those who were not occupying, entering into, or alighting from the vehicle, as well as those who were—are entitled to coverage under the [MVFRL], is an issue that we are not called upon to resolve ...")

8. Although unnecessary to the disposition of the instant issue, even if Ms. Dorohovich had been attempting to fill her car with unleaded gasoline, since the cause of the injury was external to the vehicle itself, we would be similarly inclined to deny coverage.

we would affirm the trial court's order granting West American's motion for summary judgment.

Appeal quashed.

McEWEN, J., files a concurring and dissenting opinion.

McEWEN, Judge, concurring and dissenting:

The majority opinion understandably concludes that the order which granted the motion of West American for summary judgment on the claim of appellant for first party benefits is interlocutory because appellant is still able to pursue before arbitrators an alternate claim for uninsured or underinsured benefits, thereby requiring that the appeal be quashed. The majority does not, however, simply quash the appeal but proceeds instead to a learned discussion of what will, for the arbitrators, be an issue of fundamental focus, namely, did the injuries of appellant arise "out of the maintenance or use of a motor vehicle".[1] As many advocates will characterize that further discussion by the majority as commendable, as will label it needless dicta. Those advocates would all agree, however, that once the issue becomes a matter of discussion, expression of a contrary view becomes a matter of obligation. Thus it is that I state that, in my opinion and contrary to the expression of the majority, the injuries of appellant *did* arise from "maintenance or use of a motor vehicle".

West American states repeatedly in its preliminary objections, its memorandum in support of the preliminary objections, and its brief to this court that appellant suffered the injuries while "she was attempting to remove a gasoline can from the rear of her automobile". Therefore, West American, in my view, acknowledges—admits if you will—that appellant was "unloading" the vehicle. The carefully craft-

---

1. The phrase "maintenance or use of a motor vehicle" is a condition precedent for the recovery of first party benefits (75 Pa.C.S. § 1713(a)) which are the subject of this appeal, as well as of the uninsured motorist coverage (75 Pa.C.S. § 1731(b)) and underinsured motorist coverage (75 Pa.C.S. § 1731(c)) claims which are the subject of arbitration.

ed opinion of President Judge James E. Rowley in *Omodio v. Aetna Life & Casualty,* 384 Pa.Super. 544, 559 A.2d 570 (1989), leaves no doubt that "loading and unloading" is within the certain embrace of the MVFRL phrase "maintenance and use" of a vehicle. *See also: Callahan v. Federal Kemper Insurance Company,* 390 Pa.Super. 201, 568 A.2d 264 (1989). Thus, I would hold, were the question before us, that since appellant was *unloading* the vehicle she is eligible for recovery under the MVFRL.