640 A.2d 1352

**Mary Ethel FRAIN, Appellant,**

v.

**KEYSTONE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Submitted March 14, 1994.

Filed April 29, 1994.

---

7. *See* Trial Court Opinion at 8–10.

464

James T. Rague, III, Wellsboro, for appellant.

Susan B. Caravaggio, Williamsport, for appellee.

Before CIRILLO, JOHNSON and BROSKY, JJ.

CIRILLO, Judge.

This is an appeal from an order entered in the Court of Common Pleas of Tioga County granting summary judgment in favor of appellee Keystone Insurance Company (Keystone) and against appellant Mary Ethel Frain. We reverse.

The underlying facts of this case are not in dispute. On the morning of June 23, 1989, Mrs. Frain and two companions, Joanne Losinger and Dorothy Baker, rode in Mrs. Losinger's automobile from their homes to a nearby ceramics shop in Gaines, Pennsylvania. After leaving the shop and while re-entering Mrs. Losinger's automobile, Mrs. Baker yelled either, "look-out" or "run." Mrs. Frain looked up and saw a tractor trailer entering the private driveway, approaching Mrs. Losinger's automobile. All three quickly moved away from the automobile; in particular, Mrs. Frain turned away from the vehicle and ran.[1] As she ran, Mrs. Frain stumbled over a flowerbed located approximately three to four feet away from Mrs. Losinger's parked automobile and struck her head on the porch of the ceramics shop, causing injuries to her head.

Neither Mrs. Frain nor any member of her household owned an automobile or had an applicable policy of automobile insurance. Mrs. Frain requested first party benefits from Keystone, the insurer of Mrs. Losinger's vehicle, but was denied coverage. Consequently, Mrs. Frain filed a declaratory judgment action against Keystone seeking first party benefits.

Thereafter, both Mrs. Frain and Keystone filed motions for summary judgment. After hearing arguments, the Honorable Robert M. Kemp, Senior Judge, Specially Presiding, granted Keystone's motion and denied Mrs. Frain's motion. Judge Kemp relied on the Pennsylvania Supreme Court's decision in *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984) in finding that Mrs. Frain was not an "occupant" of Mrs. Losinger's vehicle at the time of the accident. Mrs.

---

1. The deposition testimony of Mrs. Frain and Mrs. Losinger is unclear as to whether Mrs. Frain closed the front passenger door before running, or whether the impact from the truck caused the door to close.

Frain filed this timely appeal and raises the following question for our consideration:

Whether Mrs. Frain was an "occupant" of Mrs. Losinger's vehicle at the time of the accident, thereby entitling her to first party benefits under the Keystone insurance policy?

■ Generally, the proper construction of a policy of insurance is a matter of law which may properly be resolved by a court pursuant to a motion for summary judgment. *See Fisher v. Harleysville Ins. Co.*, 423 Pa.Super. 362, 621 A.2d 158 (1993); *Steinbacher v. Page*, 410 Pa.Super. 586, 600 A.2d 608 (1991); *see also Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983). When we review the grant of a motion for summary judgment made under Pa.R.C.P. 1035, our scope of review is well settled: summary judgment is properly granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b).[2] The moving party has the burden of proving that there is no genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). The record and any inferences therefrom must be viewed in the light most favorable to the nonmoving party, and any doubt must be resolved against the moving party. *Davis v. Pennzoil*, 438 Pa. 194, 264 A.2d 597 (1970). The trial court will be overturned on the entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *Hetrick v. Apollo Gas Co.*, 415 Pa.Super. 189, 608 A.2d 1074 (1992).

■ The standards to be applied in reviewing insurance contracts are well settled. The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. *Dibble v. Security of America Life Ins. Co.*, 404 Pa.Super. 205, 210, 590 A.2d 352, 354 (1991); *see also*

**2.** Rule 1035(a) provides:

After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and support affidavits.

Pa.R.C.P. 1035(a).

*Dorohovich v. West American Ins. Co.,* 403 Pa.Super. 412, 589 A.2d 252 (1991). In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved. *Id.* While reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, *see Collister v. Nationwide Life Ins. Co.,* 479 Pa. 579, 388 A.2d 1346 (1978) and *Winters v. Erie Ins. Group,* 367 Pa.Super. 253, 532 A.2d 885 (1987), an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous. *Bateman v. Motorists Mut. Ins. Co.,* 527 Pa. 241, 245, 590 A.2d 281, 283 (1991); *see also Neil v. Allstate Ins. Co.,* 379 Pa.Super. 299, 549 A.2d 1304 (1988); *St. Paul Mercury Ins. Co. v. Corbett,* 428 Pa.Super. 54, 630 A.2d 28 (1993) (en banc). However, where a provision of an insurance policy is ambiguous, the provision is construed in favor of the insured and against the insurer. *Bateman,* 527 Pa. at 245, 590 A.2d at 283.

■ Here, the Keystone policy provides that it will pay an "insured" "reasonable expenses incurred for necessary medical and funeral services (first party benefits) because of bodily injury[.]" The policy defines "insured" in the following manner:

1. You or any "family member". . . .

2. **Any other person while** *"occupying "* **"your covered auto[.]"**

&ast; &ast; &ast; &ast; &ast; &ast;

**"Occupying" means in, upon,** *getting in,* **on,** *out* **or off.** (emphasis added). Keystone contends that Mrs. Frain was not an "occupant" of Mrs. Losinger's insured vehicle at the time of the accident and, therefore, is not entitled to first party benefits under the policy.

In *Utica, supra,* the Pennsylvania Supreme Court examined an insurance policy which defined "occupancy" in a manner similar to the policy in this case. *Utica,* 504 Pa. at 333, 473 A.2d at 1008. The Court found that "a liberal interpretation of the term 'occupying' is required" and set forth a four prong

test to determine whether a person will be considered to be "occupying" the insured vehicle at the time of the accident:

(1) there is a **causal relation** or connection between the injury and the *use* of the insured vehicle;

(2) the person asserting coverage must be in a reasonably **close geographic proximity** to the insured vehicle, although the person need not be actually touching it;

(3) the person must be **vehicle oriented** rather than highway or sidewalk oriented at the time; *and*

(4) the person must also be engaged in a **transaction essential to the use of the vehicle** at the time.

*Id.* at 335, 473 A.2d at 1009 (emphasis added) (citing *Rau v. Liberty Mut. Ins. Co.,* 21 Wash.App. 326, 585 P.2d 157 (1978)).

Applying the *Utica* analysis, the trial court found that although Mrs. Frain was in proximity to Mrs. Losinger's automobile at the time of the accident, there was no causal relationship or connection between Mrs. Frain's injuries and the use of Mrs. Losinger's vehicle; "[t]he insured vehicle did not contribute to the injury of the plaintiff (Mrs. Frain)." We do not agree.

■ To be deemed an "occupant," it is not necessary for the insured vehicle to directly cause the injuries to the claimant. Contrary to the trial court's and Keystone's interpretation of *Utica*'s causation prong as requiring some direct or physical connection between the insured motor vehicle and the injured person, the first prong of the *Utica* test is clear in that it requires only some relation or connection "between the injury **and the *use* of the insured vehicle."**

This point is illustrated in *Utica, supra* and *Fisher, supra.* In *Utica,* an individual (plaintiff) was driving an automobile owned by his employer when he was involved in a minor traffic accident with another automobile. *Utica,* 504 Pa. at 330, 473 A.2d at 1006. While the plaintiff was exchanging information with the other driver, a police officer arrived at the scene and told the plaintiff to get his driver's license and owner's card from his vehicle. When the plaintiff returned to the police vehicle with the requested information, the plaintiff

was struck and killed by an automobile driven by an uninsured motorist. At the time of the accident, the plaintiff's employer's vehicle was parked approximately 100 feet away from the police vehicle. *Id.*

The decedent's estate sought uninsured motorist benefits from Utica Mutual Insurance Company (Utica), the insurer of the employer's vehicle. The arbitrators denied recovery under the Utica policy because they ruled that the decedent was not "occupying" the employer's vehicle at the time he was killed. The trial court reversed the arbitrator's award and the Pennsylvania Supreme Court affirmed that decision insofar that it found the decedent to be an "occupant" of his employer's vehicle at the time of the accident. *Id.* at 331–32, 473 A.2d at 1007.

Even though the employer's vehicle did not directly cause the plaintiff/decedent's death, the Court held that "it was the *use* of the (employer's) vehicle which precipitated the whole unfortunate series of events." *Id.* at 336, 473 A.2d at 1009 (emphasis added). Applying the remaining elements of its newly constructed standard, the Court found that the decedent was an occupant of his employer's automobile at the time of his death. *Id.*

In *Fisher, supra,* the plaintiff and his friend went deer hunting. They were driven to the hunting area in the friend's pickup truck by the plaintiff's uncle. Later that same afternoon, the driver returned to the hunting area and waited for the hunters on the berm of the road. As the hunters approached the truck, the driver instructed them to unload their guns before entering the truck; the driver turned on the headlights so that the hunters could see in the darkness. Before the plaintiff could retrieve all of his rifle shells, however, he was struck by an approaching vehicle and sustained serious injuries. *Fisher,* 423 Pa.Super. at 363, 621 A.2d at 159.

This court was asked to determine whether the plaintiff, who was struck by *another vehicle* while standing in front of the insured truck and while unloading his rifle in front of the

insured truck, was an "occupant" of that truck within the meaning of the truck's insurance policy. This court applied the *Utica* factors and affirmed the trial court's grant of summary judgment in favor of the plaintiff, finding that the plaintiff was an occupant of the insured truck at the time of the accident. *Id.* at 365–66, 621 A.2d at 160. Even though the insured truck never came into contact with the injured person's body, this court expressly found that, because the plaintiff was preparing to enter the insured vehicle when he was struck, "there *was* a causal connection between the injuries which he sustained and the *use* of the truck." *Id.* (emphasis added). Additionally, this court found that: (1) the claimant was in close proximity to the insured truck, as he was standing in front of it at the time of the accident; and (2) the claimant was vehicle/truck oriented because he was making preparation to enter the truck at the time of the accident. *Id.*

In this case, although Mrs. Frain's injuries were not sustained as a result of any direct contact by the insured vehicle, her injuries were clearly the result of her "occupying" the covered automobile as defined by the Keystone policy. *Utica, supra; Fisher, supra.* The record indicates that at the time of the accident, Mrs. Frain had already placed her purse into Mrs. Losinger's vehicle and was in the process of "getting in" or entering the vehicle through the opened front passenger door. The fact that she saw the oncoming vehicle in time to attempt to dodge out of harm's way does not, in and of itself, break the chain of causation. To hold otherwise would serve to encourage irresponsible behavior; under the trial court's and Keystone's rationale, for example, Mrs. Frain would have been entitled to first party benefits if she had decided to get into the insured vehicle after seeing the oncoming tractor trailer, rather than fleeing. We cannot countenance such an absurd result. *See Tyler v. Ins. Co. of North America,* 311 Pa.Super. 25, 457 A.2d 95 (1983) (holding that a passenger of a bus who was struck by a motorcycle as she was stepping off the bus was an occupant of the bus at the time of the accident).

The following cases are distinguishable from the instant case in that they are totally devoid of any causal connection, *Utica, supra,* between the *use* of the motor vehicle and the injury sustained: *Smith v. United Services Auto. Ass'n,* 392 Pa.Super. 248, 572 A.2d 785 (1990) (holding that no causal connection exists where a passenger on a haywagon threw hay at the plaintiff causing him to collide with a tree); *McKelvey v. Prudential Property & Cas. Ins. Co.,* 392 Pa.Super. 216, 572 A.2d 769 (1990) (holding that no causal connection exists where an insured injured his shoulder when he hit the door frame of his house when running to investigate the safety of his screaming children after a motor vehicle crashed into his house); *Roach v. Port Auth. of Allegheny County,* 380 Pa.Super. 28, 550 A.2d 1346 (1988) (holding that no causal connection exists where a passenger of a bus was injured as the result of a fight between two other passengers); and *Alvarino v. Allstate Ins. Co.,* 370 Pa.Super. 563, 537 A.2d 18 (1988) (holding that no causal connection exists where a child was bitten by a dog while riding in a motor vehicle).

■ Next, in order to determine whether Mrs. Frain was an "occupant" of the insured vehicle at the time of the accident, we must apply the facts of this case to the remaining three prongs of the *Utica* test. We find, as the trial court found, that Mrs. Frain was in close proximity to Mrs. Losinger's vehicle at the time of the accident. *Utica, supra.* Specifically, the evidence of record shows that Mrs. Frain fell approximately three to four feet away from Mrs. Losinger's parked vehicle.

We also find that Mrs. Frain was vehicle oriented at the time of the accident because she was in the process of entering the vehicle in order to make the return trip home. *But see Aetna Cas. & Sur. Co. v. Kemper Ins. Co.,* 657 F.Supp. 213 (E.D.Pa.1987) and *Downing v. Harleysville Ins. Co.,* 412 Pa.Super. 15, 602 A.2d 871 (1992) (both holding that an accident victim, who was injured after exiting one vehicle on the side of the road in order to help a disabled vehicle, and was then struck by a third vehicle, was not an occupant of the disabled vehicle because he or she had never been inside the

disabled car and there was nothing to indicate that he or she ever intended to enter the disabled vehicle); *McGilley v. Chubb & Son, Inc.,* 369 Pa.Super. 547, 535 A.2d 1070 (1987) (holding that a taxicab driver, who was hit by a bus after he abandoned his vehicle to "bum" a cigarette from the taxicab parked in front of him, was highway oriented and not vehicle oriented at the time of the accident).

Turning to the fourth and last prong of the *Utica* test, we find that Mrs. Frain's process of entering the subject vehicle was a transaction essential to its use. *Utica, supra; see also Shultz v. Nationwide Ins. Co.,* 373 Pa.Super. 429, 541 A.2d 391 (1988) (holding that an individual, who was struck by another vehicle while she was refueling her disabled vehicle, was engaged in a transaction essential to the disabled vehicle's use).

We conclude that Mrs. Frain was an occupant of the subject vehicle at the time of the accident within the meaning of the Keystone policy. *Utica, supra.* We find, therefore, that the trial court committed an error of law when it granted summary judgment in favor of Keystone and against Mrs. Frain. *Hetrick, supra.*

Accordingly, the trial court's order is reversed and the case is remanded for proceedings consistent with this decision. Jurisdiction relinquished.

JOHNSON, J., dissents.

JOHNSON, Judge, dissenting.

I am unable to conclude that Mary Ethel Frain was an "occupant" of Mrs. Losinger's vehicle at the time of the accident. Therefore, she is not entitled to benefits under the policy issued by Keystone Insurance Company (Keystone). For this reason, I must respectfully dissent.

The Keystone policy in effect at the time of the accident provided that it would pay an "insured" "reasonable expenses incurred for necessary medical and funeral services (first party benefits) because of bodily injury[.]" The policy defined "insured" as follows:

1. You or any "family member"....
2. Any other person while "occupying" "your covered auto[.]"

Further, the policy defined "occupying" as "in, upon, getting in, on, out or off."

Keystone contends that Frain was not occupying the vehicle at the time she sustained her injuries. Thus, Keystone argues that Frain is not entitled to benefits under the Keystone policy. I agree.

In *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 336, 473 A.2d 1005, 1009 (1984), the Pennsylvania Supreme Court held that a person will be considered to be "occupying" a vehicle if that person can satisfy the following four criteria:

(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

After applying these criteria, I am unable to find that Frain was vehicle oriented at the time she sustained her injuries. Frain had turned from the Losinger vehicle and was fleeing to avoid injury from the approaching tractor trailer. Therefore, Frain was not vehicle oriented at the time of the accident.

I am also unable to find that Frain was engaged in a transaction essential to the use of the Losinger vehicle. I am unable to understand how a passenger running for her life away from a vehicle relates in any manner to the owner's use of the car.

Because I have determined that Frain was neither vehicle oriented nor engaged in a transaction essential to the use of the Losinger vehicle, I cannot conclude that Frain was an

474

"occupant" of the Losinger vehicle at the time she sustained her injuries.

Accordingly, I dissent. I would affirm the trial court's order which granted summary judgment in favor of Keystone and against Frain.