**Stanton BUBIS and Ileene Bubis, h/w, Appellees,**

v.

**The PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY and Edward J. Janiszewski, Appellants.**

Superior Court of Pennsylvania.

Argued June 16, 1998.
Filed Oct. 15, 1998.

Susan E. Boyer, Philadelphia, for appellants.

Louis F. Hinman, III, Philadelphia, for appellees.

Before CAVANAUGH, STEVENS and HESTER, JJ.

STEVENS, Judge:

This appeal is from the declaratory judgment of the Court of Common Pleas of Philadelphia County which found Appellees Stanton and Ileene Bubis were due first party medical coverage in the amount of one-hundred thousand dollars ($100,000.00) from Appellant Prudential Property and Casualty Company. After a review of the record and briefs of the parties, we reverse the decision of the trial court.

Appellees were insured by Appellant for automobile coverage under a policy purchased in 1987, which provided coverage benefits for, among other things, maximum medical coverage of one-hundred thousand dollars ($100,000.00). In 1990, Appellees were sent correspondence from Appellant which contained an election of benefits form containing the following questions:

1. Do you want to lower your [first party] medical coverage to the $5,000 minimum?

2. Do you want to lower your wage loss coverage?

3. Do you want to drop your funeral benefits?

Appellees checked both the "yes" and "no" boxes in response to both questions 1 and 2 and, consequently, Appellant changed Appellees' policy to reflect first party medical coverage in the sum of five thousand dollars ($5,000.00).

On February 1, 1994, Appellee Stanton Bubis was injured in an automobile accident. Appellant paid medical benefits in the sum of five-thousand dollars ($5,000.00). Appellant denied additional medical coverage claiming that Appellees had exhausted their limit under the policy.

Appellees sought a declaratory judgment, alleging that the policy coverage should permit one-hundred thousand dollars ($100,000.00) in first party medical coverage. At the conclusion of a non-jury trial, the Honorable Norman A. Jenkins found that Appellees were due one-hundred thousand dollars ($100,000.00) of coverage under the terms of the automobile liability policy with Appellant.[1] This appeal followed.

---

1. There have been no findings of fact submitted by the trial court in this matter. The Pennsylvania Supreme Court has decided that where the decision in a non-jury trial is in the form of a naked verdict without findings of fact, the appellate court must make an independent review of the record. *See Lewkowicz v. Blumish,* 442 Pa. 369, 275 A.2d 69 (1971). The facts in this case are not disputed by the parties, and the issues presented involve matters of law.

■ Appellant raises three issues on appeal: Appellant first claims that Appellees made a knowing and intelligent election for lower medical benefits; Second, Appellant claims that Appellees cannot claim that their reasonable expectations under the terms of the policy were frustrated; and lastly, Appellant avers, given all of the facts, that the trial court erred in reforming the insurance contract between Appellees and Appellant.

This Court, in *Frain v. Keystone Insurance Company*, 433 Pa.Super. 462, 640 A.2d 1352 (Pa.Super.1994), articulated the standard to be applied in reviewing insurance contracts.

> The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. *Dibble v. Security of America Life Ins. Co.*, 404 Pa.Super. 205, 210, 590 A.2d 352, 354 (1991); *see also Dorohovich v. West American Ins. Co.*, 403 Pa.Super. 412, 589 A.2d 252 (1991). In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved. *Id.* While reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, *see Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346 (1978) and *Winters v. Erie Ins. Group*, 367 Pa.Super. 253, 532 A.2d 885 (1987), an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous. *Bateman v. Motorists Mut. Ins. Co.*, 527 Pa. 241, 245, 590 A.2d 281, 283 (1991); *see also Neil v. Allstate Ins. Co.*, 379 Pa.Super. 299, 549 A.2d 1304 (1988); *St. Paul Mercury Ins. Co. v. Corbett*, 428 Pa.Super. 54, 630 A.2d 28 (1993) (en banc). However, where a provision of an insurance policy is ambiguous, the provision is construed in favor of the insured and against the insurer. *Bateman*, 527 Pa. at 245, 590 A.2d at 283. *Frain*, 640 A.2d at 1355.

Here, Appellant sent correspondence to Appellees asking if Appellees wished to change their existing policy.[2] One of several questions posed to Appellees was whether they wished to change their first party medical coverage to the minimum of five thousand dollars ($5,000.00). In the corresponding box, Appellees checked both "yes" and "no." While the answer was ambiguous, the policy issued to Appellees was not. From 1990, when Appellee first responded to said questionnaire, until Appellee Stanton Bubis' accident in 1994, Appellees received a declaration of benefits statement which clearly stated that Appellees benefits included five thousand dollars ($5,000.00) of first party medical coverage. The declaration was sent every six months, and Appellees readily admit that they failed to read the declaration.

Additionally, Appellees elected coverage of one million dollars ($1,000,000.00) in extraordinary benefits. Appellant's authorized agent, Edward Janiszewski, testified that he discussed possible "gaps" in coverage with Appellee Stanton Bubis when he first wrote a policy for Appellees.[3] For example, when Appellees first signed their policy, Janiszewski spoke to Appellee Stanton Bubis about the effect of a possible "gap" in health coverage and automobile first party medical benefits. N.T. 1/5/95 at 83. Thus, Appellees were well aware of the possible implications of a "gap" in coverage.

This Court has found that in a contract action, lest proof of fraud, failure to read a contact is an unavailing excuse or defense and cannot justify avoidance, modification or nullification of the contract. *See Graham v. Harleysville Insurance Company*, 429 Pa.Super. 444, 632 A.2d 939 (Pa.Super.1993). The record indicates that Appellee Stanton Bubis, who was primarily responsible for overseeing

---

2. Appellee was sent a thirteen page packet explaining to them the new options they had available under Pennsylvania's Motor Vehicle Financial Responsibility (MVFRL) Law. This package also contained an election of benefits form, which represented the new options provided for under the MVFRL.

3. Appellees allege that they would never knowingly elect the lower medical coverage because it would create a gap due to their choice of extraordinary medical coverage which would cover medical expenses over one hundred thousand dollars ($100,000.00) up to one million dollars ($1,000,000.00).

the automobile insurance policy for his family, is a meticulous, organized and well-informed individual. N.T. 1/5/95 p. 43. Additionally, Appellee Stanton Bubis admits he has contacted Appellant directly as well as Edward Janiszewski when he has questions regarding his policy. N.T. 1/5/95 pp. 47–48.

Moreover, the declaration of benefits which Appellees received bi-yearly was both clear and unambiguous. The terms of Appellees first party benefits, including their medical coverage, were conspicuously placed in the declaration of benefits. In fact, Appellant listed the medical expenses coverage under a line which read, in part, "important messages about your policy." Listed first in this section was the statement "first party benefits include: medical expenses $5,000." This statement was made on every declaration from August of 1991 until Appellee Stanton Bubis's accident in 1994.

■ While the law provides that an ambiguity in an insurance contract should be read in favor of the insured, this should not hold true when that ambiguity is created by the insured. Herein, Appellees created the ambiguity by checking both boxes on their insurance election form. The form itself was clear and unambiguous as were the questions posed to Appellees. Appellant received bi-yearly declarations of their coverage. Additionally, Appellant enjoyed a substantial deduction on premium payments as a result of the reduction of first party medical benefits. To allow the insured to benefit from their creation of an ambiguous situation would be both unfair and inequitable. As such, we find that Appellees are responsible for the ambiguity, and the contract should not be construed in their favor. Thus, based on the forgoing, Appellees made both a knowing and intelligent election of lower medical benefits.

■ As for Appellant's second issue, we agree that Appellees cannot argue successfully that their reasonable expectations under the terms of the policy would be frustrated by the election of lower first party medical benefits.

This Court has focused on the reasonable expectation of the insured in analyzing an insurance contract. *See Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55. In analyzing an insured's reasonable expectations, the Pennsylvania Supreme Court opined that, "the public has a right to expect that they will receive something of comparable value in return for their premium paid." *Collister*, 479 Pa. at 594, 388 A.2d at 1353.

Here, Appellees enjoyed a lower premium after their first party medical coverage was reduced. Appellee paid less for first party medical coverage from August 1990 through the accident in 1994. At no point did Appellees investigate why they were paying less for first party benefits. As such, Appellee received the value of their premium.

■ Finally, based on our discussion *supra*, we conclude that the trial court erred in finding that Appellees were entitled to one-hundred thousand dollars ($100,000.00) in coverage, thereby reforming the parties' contract. The language of the insurance contract was both clear and unambiguous. Additionally, Appellee's failure to read the declaration of benefits is not a viable excuse warranting a modification of the existing policy. Also, Appellees enjoyed the benefit of a lower premium because of the reduced medical coverage for a period of more than three years. Therefore, Appellee's first party medical benefits should reflect a five thousand dollar ($5,000.00) limit.

As such, we find that the trial court erred in finding in favor of Appellees in regard to their declaratory judgment action.

Reversed; and remanded with direction to the lower court to enter judgment in favor of Appellant. Jurisdiction relinquished.