**Russell UPDIKE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (YEAGER SUPPLY, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 9, 1999.

Decided Sept. 3, 1999.

Publication Ordered Nov. 15, 1999.

Gary C. Martin, Philadelphia, for petitioner.

Gregory D. Geiss, Harrisburg, for respondent.

Before KELLEY, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

LEADBETTER, Judge.

Petitioner Russell Updike appeals from an order of the Workers' Compensation Appeal Board which affirmed the allowance of subrogation rights to Yeager Supply, Inc., Updike's employer, against a third-party tort recovery obtained by Updike.

On May 10, 1990, in the course and scope of his employment, Updike delivered a load of pipe to one of employer's customers (Valley Protein). A forklift, driven by a Valley Protein employee, was to offload the pipe from Updike's truck. Updike assisted in this process by first dropping the gates on his truck and then guiding the forklift operator in positioning the tines of the forklift under the bundle of pipe. With the tines tilted back in order to secure the load, the pipe was then lifted off the bed of the truck. However, as the operator of the forklift attempted to back away from the truck, the forklift lurched, tilted forward, and as a result, the load of pipe was ejected off of the tines of the forklift. The pipe fell on Updike, pinning him to the bed of the truck and causing him serious injuries.

Pursuant to a notice of compensation payable, employer has been paying benefits to Updike for work-related injuries to his low back, left hip and left shin. As a result of his injuries, Updike also commenced a third-party action against Valley Protein for negligent operation of the fork-

lift. Subsequently, Updike agreed to a settlement of the third-party action, and, as a result, recovered $330,000.00.

Employer filed a petition to review compensation benefits seeking subrogation of the proceeds received by Updike in connection with the third-party settlement pursuant to Section 319 of the Pennsylvania Workers' Compensation Act.[1] Updike filed an answer denying the allegations of employer's petition and asserting that employer has no right to subrogation. The Workers' Compensation Judge (WCJ), in a decision dated July 29, 1996, granted the petition to review compensation benefits, concluding that Updike's injury did not arise out of the maintenance or use of a motor vehicle but rather the negligent operation of the forklift. On appeal, the Board affirmed.[2] This appeal followed.[3]

■ At the time of Updike's injury, Section 1722 of the Motor Vehicle Financial Responsibility Law (MVFRL) provided:

In any *action* for damages against a tortfeasor, or any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, ... shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation. ...

75 Pa.C.S. § 1722 (emphasis added). In tandem with this provision, Section 1720 of the MVFRL provided, in pertinent part: "In *actions* arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671. Section 319 provides in relevant part: "Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee ... against such third party to the extent of the compensation payable under this article by the employer...." 77 P.S. § 671.

2. The Board remanded the case to the WCJ for the sole purpose of making a finding as to the amount of subrogation to which employer is entitled.

3. Based on the issues raised by the parties in this appeal and preserved for review, the scope of our review is limited to determining whether an error of law was committed, an issue over which we exercise plenary review.

...." (emphasis added). Thus, according to the statutory scheme, in the tort action the injured claimant could not prove as part of his damages those benefits for which his employer was liable under the Workers' Compensation Act, and since claimant could not recover those damages from the third party tortfeasor, the employer had no right of subrogation in the third party recovery. The effect, and obvious legislative intent, was to mandate that the ultimate burden for payment of compensation benefits remain with Worker's Compensation insurance and not be passed on to automobile insurance (and the premiums by which auto insurance is funded).[4]

■ The issue before us, then, is whether the fund out of which employer seeks subrogation was generated by an *action* arising out of the maintenance or use of a motor vehicle. Plainly it was not. The action from which claimant derived his recovery was based upon the negligent operation of a forklift and there is no dispute that a forklift is not a "motor vehicle."[5]

In stating his case, claimant maintains that his injuries arose while he was unloading a motor vehicle and hence, there is no right of subrogation. In support of his position, Updike relies on *Callahan v. Federal Kemper Insurance Co.*, 390 Pa.Super. 201, 568 A.2d 264 (1989) and *Omodio v. Aetna Life and Casualty*, 384 Pa.Super. 544, 559 A.2d 570 (1989). We find these cases inapposite. The issue before the Superior Court in those cases was whether an automobile insurance policy which excluded first party benefit coverage for injuries sustained during loading or unloading a motor vehicle was prohibited by sections 1711 and 1712 of the MVFRL, which required insurers "to make available for purchase first party benefits 'with respect to *injury* arising out of the maintenance or use of a motor vehicle....'" *Omodio*, 559 A.2d at 571 (emphasis added). In that context, the court looked to the definition of "maintenance and use" in the former Pennsylvania No-fault Motor Vehicle Insurance Act[6] and determined that the definition included loading and unloading a motor vehicle if the injured party was occupying the vehicle when the accident occurred.[7] The statutory provision involved here, however, does not concern itself with *injuries* arising out of maintenance and use, but, as noted above, with funds generated in *actions* so arising.

In addition, even those first party benefit cases where the critical inquiry was whether the *injuries* arose from operation and use of a motor vehicle, proof of a causal connection between the injuries and the maintenance or use was required. *Dorohovich v. West Am. Ins. Co.*, 403 Pa.Super. 412, 589 A.2d 252, 257 (1991); *see also, Huber v. Erie Ins. Exch.*, 402 Pa.Super. 443, 587 A.2d 333 (1991). "[I]n determining whether the injury arose out of the maintenance or use of a motor vehicle, we must look to the 'instrumentality used to cause the injury'." *Dorohovich*, 589 A.2d at 257 [*quoting Smith v. United Services Auto. Ass'n*, 392 Pa.Super. 248, 572 A.2d 785, 786 (1990)]. *See also Roach v. Port*

4. By the Act of July 2, 1993, P.L. 190 (Act 44), the legislature concurrently repealed these provisions as they relate to workers' compensation benefits. However, the law at the time of Updike's injury controls this case. *DePaul Concrete v. Workers' Compensation Appeal Bd. (White)*, 734 A.2d 481 (Pa Cmwlth.1999). *See also Byard F. Brogan, Inc. v. Workmen's Compensation Appeal Bd. (Morrissey)*, 161 Pa. Cmwlth. 453, 637 A.2d 689, 694 (1994).

5. As defined by the Vehicle Code, a "motor vehicle" is "[a] vehicle which is self-propelled except one which is propelled solely by human power or by electric power obtained from overhead trolley wires, but not operated upon rails." 75 Pa.C.S. § 102. Furthermore, a "vehicle" is defined as "[e]very device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks." *Id.*

6. Act of July 19, 1974, P.L. 489, §§ 101–701, *formerly* 40 P.S. §§ 1009.101–1009.701, repealed by Act of February 12, 1984, P.L. 26.

7. Petitioner was standing with both feet on the bed of his truck at the time of the accident.

*Auth. of Allegheny County,* 380 Pa.Super. 28, 550 A.2d 1346 (1988) (holding that no causal connection exists where a passenger on a bus is injured as a result of a fight between other passengers); *Alvarino v. Allstate Ins. Co.,* 370 Pa.Super. 563, 537 A.2d 18 (1988) (holding that no causal connection exists where a child was injured in a van after being bitten by a dog); and *Camacho v. Nationwide Ins. Co.,* 314 Pa.Super. 21, 460 A.2d 353 (1983), *aff'd,* 504 Pa. 351, 473 A.2d 1017 (1984) (driver injured when occupant of another vehicle threw an explosive device into driver's vehicle and device exploded while driver attempted to throw it out his window). Like his action, Updike's injuries did not arise out of the maintenance or use of his vehicle but, rather, from the negligent actions of the forklift driver.

*Lehrer/McGovern v. Workers' Compensation Appeal Board (Sinclair),* 720 A.2d 853 (Pa.Cmwlth.1998), upon which Updike also relies, is equally unavailing. In that case, a construction worker was injured during the operation of a truck specially fitted to carry, load and unload dumpsters. While the driver manipulated a hoist and winch attached to the back of the truck, but controlled from inside the truck and powered by the truck's engine, a three hundred pound steel "gang box" fell onto claimant, who sued the employer of the truck driver for negligent operation of the equipment. Because the operation of the hoist and winch were an integral part of the truck's design and purpose, we held that the driver's activity amounted to "operation and use of a motor vehicle." Accordingly, the funds generated from the third party suit grounded upon the driver's negligence in this operation were not subject to employer's subrogation rights.

Moreover, even if we were to accept claimant's premise that, regardless of the basis of his tort action, no subrogation may be had if he was injured while both occupying and unloading his truck, he would still be entitled to no relief. As the WCJ found, the unloading, for MVFRL purposes, ended when the pipe was removed from the truck by the forklift. Although still standing on the back of his truck, Updike was no longer engaged in unloading activities at the time of the accident. As noted by the WCJ:

> Although the use of a motor vehicle was initially involved, it was eventually parked and [Updike] was on the flat bed part of the trailer assisting the forklift driver in unloading pipe. It was the forklift, unloading pipe, that caused the injury to [Updike]. The truck carried the pipe to the site. The pipe was then unloaded from the motor vehicle onto the forklift. *The use of the motor vehicle, i.e., the truck, was then ended.*

*Russell Updike v. Yeager Supply Inc.,* slip op. at 5 (dated July 29, 1996) (emphasis added).

Accordingly, the order of the Board is hereby affirmed.

### O R D E R

AND NOW, this 3rd day of September, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.