N. Morning Cloud JONES–MOLINA and Pennsylvania Financial Responsibility Assigned Claims Plan

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 2011.

Decided July 22, 2011.

Maureen L. McGinty and Stephen Vedro, Philadelphia, for appellant.

Gwen R. Tureski, Philadelphia, for appellee N. Morning Cloud Jones–Molina.

Thomas P. Kelly, Philadelphia, for appellee Pennsylvania Financial Responsibility Assigned Claims Plan.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY President Judge LEADBETTER.

The Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from the order of the Court of Common Pleas of Philadelphia County, which ordered SEPTA to pay first party medical benefits and uninsured motorist benefits to N. Morning Cloud Jones–Molina, and found that the Pennsylvania Financial Responsibility Assigned Claims Plan (Plan) had no liability to Jones–Molina. We reverse and remand for the entry of judgment against the Plan.

The facts of this case are not in dispute. On February 14, 2005, Jones–Molina was on the way to visit her sister, a trip that involved both the use of a SEPTA bus and a SEPTA trolley. She took the Route 52 bus to the corner of 49th Street and Woodland Avenue, Philadelphia, where, after having purchased a transfer ticket, she disembarked, intending to transfer to the Route 11 trolley. Once off the bus, Jones–Molina walked about five feet to the corner, waited for the light to change, and then began crossing the street. In the intersection she was struck by an unidentified, and presumably uninsured, vehicle.

Jones–Molina brought an action in common pleas against the Plan, seeking first party and uninsured motorist benefits. The Plan joined SEPTA as an additional defendant and, at trial, asserted that, while transferring, Jones–Molina remained a legal "occupant" of a SEPTA vehicle, and that SEPTA was therefore liable to Jones–Molina under the terms of its self-insurance. Furthermore, the Plan argued that because it is the insurer of last resort, SEPTA was primarily and solely liable for Jones–Molina's injuries. SEPTA argued

that Jones–Molina was not the occupant of one of its vehicles at the time she was struck, and that it had sovereign immunity from suits of this sort. Common pleas ruled against SEPTA on both the occupancy and sovereign immunity issues, finding SEPTA, and not the Plan, liable to Jones–Molina.

SEPTA appealed to this court. The Plan, as an appellee, supports common pleas' decision. Jones–Molina, also an appellee, argues that the judgment against SEPTA should be affirmed, but that if it is reversed, the Plan should be held liable. We first evaluate SEPTA's liability, and then that of the Plan.

SEPTA is a self-insured entity as defined by the Motor Vehicle Financial Responsibility Law (MVFRL).[1] See 75 Pa. C.S. § 1787. As a self-insurer, SEPTA is required to provide up to $5000 in first party benefits and $15,000 in uninsured motorist coverage. Id.; 75 Pa.C.S. §§ 1711, 1774. Both types of coverage apply to the occupants of the insured vehicle.[2]

While our Supreme Court has not interpreted the meaning of the word "occupant" in the statutory provisions at issue, it has developed a four-part test to determine who qualifies as an "occupant" as the term is used in private vehicle insurance policies. Our Supreme Court has held that a person will be considered to be occupying a vehicle if:

(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

(2) the person asserting coverage must be in a reasonably close geographic

---

1. 75 Pa.C.S. § 1701 et seq.

2. While the provisions at issue have slightly different wording, both clearly apply to occupants. The first party benefits must cover the "occupants of an insured motor vehicle," 75

Pa.C.S. § 1713, while the uninsured motorist coverage is paid by a "policy covering a motor vehicle occupied by the injured person at the time of the accident." 75 Pa.C.S. § 1733.

proximity to the insured vehicle, although the person need not be actually touching it;

(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Utica Mutual Ins. Co. v. Contrisciane*, 504 Pa. 328, 336, 473 A.2d 1005, 1009 (1984). Under this test, it is not necessary for a person to be physically inside the vehicle to be considered an occupant. In *Contrisciane*, a driver had been in a minor traffic accident and had walked nearly one hundred feet from his automobile to talk to a police officer on the scene when he was struck and killed by an uninsured driver. The court noted that:

> During this time decedent's fiancé remained in the car, obviously anticipating the continuance of their journey. At all times decedent was engaged in transactions essential to his continued use of the vehicle, and it was only because of the mandated requirements of the statute and the police officer that decedent found himself physically out of contact with his vehicle. Finally, it was the use of the vehicle which precipitated the whole unfortunate series of events.

*Id.* at 336, 473 A.2d at 1009. Thus, our Supreme Court found the decedent remained an occupant of the vehicle at the time he was hit because he remained "vehicle oriented," and therefore his estate was entitled to benefits under the terms of the insurance policy covering the vehicle.[3]

This court has adopted and expanded the *Contrisciane* factors in the self-insurance context and found that a passenger transferring buses remains an occupant of the bus during the transfer. *Adeyward–I v. Pa. Fin. Responsibility Assigned Claims Plan*, 167 Pa.Cmwlth. 450, 648 A.2d 589 (1994) [affirming and adopting *Adeyward v. Se. Pa. Transp. Auth.*, 26 Phila.Co.Rptr. 382 (1993) ]. In *Adeyward–I*, a SEPTA passenger was found to remain an occupant of a SEPTA bus when, after disembarking from one bus, he was hit by an unidentified driver while crossing the street with the intent to transfer to a second bus.

A straightforward application of *Adeyward–I* to the facts of this case would appear to mandate that we find Jones–Molina, who, like the passenger in *Adeyward–I*, had disembarked from one bus and was crossing the street to board a second SEPTA vehicle when she was struck, remained the occupant of a SEPTA vehicle.[4] However, we ordered *en banc* argument in this case to review the hold-

---

3. This automobile was actually owned by the decedent's employer, but the policy covered his use.

4. SEPTA has suggested that we distinguish *Adeyward–I* based on the fact that Jones–Molina reached the sidewalk before stepping into the street, whereas the plaintiff in *Adeyward–I* went directly from the bus to the intersection. We believe that adopting this rationale would serve only to further confuse an already unclear area of our law.

Another possible factual distinction between this case and *Adeyward–I*, not seriously pursued by the parties, is that while the injured party in *Adeyward–I* was planning on transferring from one bus to a second bus, Jones–Molina intended to go from a bus to a trolley. This is potentially relevant because a trolley is not considered a motor vehicle and is therefore not subject to the same self-insurance requirements as a bus. *Ellis v. Se. Pa. Transp. Auth.*, 524 Pa. 398, 573 A.2d 216 (1990). Therefore, while the court in *Adeyward–I* found the victim to be vehicle oriented with respect to both buses, we could only find SEPTA liable here if we conclude that Jones–Molina was vehicle oriented with respect to the bus she had left, not the trolley she was intending to board. As we conclude that Jones–Molina was not vehicle oriented with

ing in *Adeyward–I*, to determine whether it correctly applied our Supreme Court's decision in *Contrisciane.*

We first note that the factual scenario in both *Adeyward–I* and the case now before us, in which a bus passenger is struck by an uninsured motor vehicle while crossing the street with the intent to transfer to another vehicle, is distinct from the facts in *Contrisciane* in a number of important ways. Unlike *Contrisciane,* in which the decedent had left his vehicle and planned on returning to that same vehicle, the injured party in *Adeyward–I* had left the bus on which he had been riding, with no intention to return, although he was, of course, intending to board a second bus. In addition, the decedent in *Contrisciane* was required to exit his vehicle due to his legal duty to cooperate with the officer on the scene, whereas the injured party in *Adeyward–I* was not mandated to exit the bus, although it was necessary to complete his journey. At the time he was struck, the injured party in *Adeyward–I*, like Jones–Molina, was engaged in an activity indistinguishable from any other pedestrian crossing the street, whereas the decedent in *Contrisciane* was in a position unique to those who have been involved in automobile accidents. Thus it is significant that interpretation of an automobile insurance policy, the only insurance available to the decedent, was the question before the Court in *Contrisciane.* The question before this court, however, is one of statutory interpretation, i.e. *which* of two types of coverage mandated by the MVFRL the legislature intended to apply in this situation.[5]

In addition to the requirement that self insurers like SEPTA provide first party and uninsured motorist benefits for occupants of its vehicles, the MVFRL provides for another source of coverage potentially applicable to a pedestrian in Jones–Molina's situation, the original defendant in this case, the Assigned Claims Plan. The Plan is an entity organized and maintained by companies providing insurance in the Commonwealth, as mandated by statute. 75 Pa.C.S. § 1751. In general, the Plan exists to provide benefits to automobile accident victims who have no other source of compensation. *See generally* 75 Pa.C.S. §§ 1751–1756.[6] Eligibility under the plan is defined by 75 Pa.C.S. § 1752. It is undisputed that Jones–Molina meets most of the eligibility requirements. The only dispute is whether she is ineligible under subsection (a)(5) of the statute, which states that an eligible claimant must not be "the operator or occupant of a motor vehicle owned by a self-insurer." 75 Pa.C.S. § 1752(a)(5).

Thus, under the statutory scheme set out in the MVFRL, if Jones–Molina was an "occupant" of the SEPTA bus while she was crossing the street, she can recover from SEPTA, but not from the Plan; if she was not an "occupant," she can recover from the Plan, but not SEPTA. For several reasons, we believe that in this situation, the legislature intended that the Plan bear the liability for Jones–Molina's losses.

First, Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a), provides that words in statutes should be construed according to their common and approved usage. Certainly, the term "occupant of a motor vehicle," in its common and ordinary sense, would not include a pedestrian crossing the street.

---

respect to either the bus or the trolley, we need not address the issue further.

5. In *Adeyward–I*, neither SEPTA nor the plaintiff seems to have argued that the Assigned Claims Plan was responsible.

6. The parties agree that if Jones–Molina is eligible to recover from the Plan, she is entitled to receive $15,000 under 75 Pa.C.S. § 1754.

Second, as noted above, treating Jones–Molina as an occupant of the bus from which she had departed would put her in a different situation from one who had concluded her journey rather than intending to transfer to a second vehicle, from one intending to transfer to a different mode of transportation such as a taxi or a PATCO subway, from one who attends to a brief errand before proceeding to the second bus,[7] and from someone just crossing the street. We see no reason why the MVFRL should be interpreted to treat a transferring bus passenger struck while in the act of crossing the street differently from such other pedestrians.

Third, the General Assembly has closely limited the circumstances and amounts for which Commonwealth agencies and instrumentalities may be held liable, even where one of its employees has acted negligently. Here, not only was SEPTA and its employees entirely lacking in culpability, its vehicle was not even involved in the accident in which Jones–Molina was injured. Thus, even if SEPTA is not immune for claims brought under the MVFRL, a question which we do not here decide,[8] the policy of strictly construing all departures from the immunity doctrine suggests that the legislative intent would have been to place the burden of covering Jones–Molina's losses on the private rather than the Commonwealth purse.

Finally, the Plan was specifically designed as a sort of "no fault" provision to

spread the risk among insurance companies to provide last resort coverage for injured persons who otherwise have no source of recovery. Given the overall scheme of the MVFRL, the common understanding of the language in its provisions and the strong policy to protect the public fisc, we believe that the General Assembly intended Jones–Molina to be covered by the Plan along with other uninsured pedestrians.

For all the forgoing reasons, we overrule our decision in *Adeyward–I*, and hold that Jones–Molina was not an occupant of the SEPTA bus as that term is used in the MVFRL at the time she was injured. Accordingly, the judgment against SEPTA is reversed and we remand for the entry of judgment against the Plan.

### *ORDER*

AND NOW, this 22nd day of July 2011, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby REVERSED, and the matter is hereby REMANDED for entry of judgment against the Pennsylvania Financial Responsibility Assigned Claims Plan and in favor of the Southeastern Pennsylvania Transportation Authority. Jurisdiction relinquished.

DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority's holding that a passenger of one bus

---

**7.** *See Se. Pa. Transp. Auth. v. Dunham,* 668 A.2d 272 (Pa.Cmwlth.1995). *Dunham* distinguished *Adeyward–I* on the basis that Ms. Dunham had to travel two blocks to catch the second bus and also because she stopped along her route to purchase hosiery. Attempting to construe "occupancy" based on such details, all inconsequential to the purposes underlying the MVFRL, would appear problematic. Would a *one* block walk to the next bus destroy "occupancy?" Would a two minute stop to buy a sandwich from a street

vendor yield a different result from a ten minute stop in a drugstore? Such line drawing difficulties reinforce our view that the *Adeyward* line of cases in our court is misdirected.

**8.** Because we have held that Jones–Molina was not an occupant of a SEPTA vehicle, SEPTA cannot be liable to her under the terms of its self-insurance and there is no other theory of liability against SEPTA. We therefore have no need to consider SEPTA's assertion of sovereign immunity.

injured crossing the street to transfer to another bus is not covered by the Motor Vehicle Financial Responsibility Act.[1]

In *Utica Mutual Insurance Company v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984), our Supreme Court held that a person was "occupying" his insured vehicle when he was struck and killed by an uninsured vehicle after leaving his car to walk over to a patrol car with his driver's information as directed by a police officer. In doing so, our Supreme Court adopted a four-prong test to determine whether a claimant "occupies" a vehicle so that he is covered by uninsured motorist coverage. The test is whether:

(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Contrisciane*, 504 Pa. at 335, 473 A.2d at 1009.

In *Adeyward–I v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 167 Pa.Cmwlth. 450, 648 A.2d 589 (1994), a case on point with this one, a plaintiff was transferring from one bus to another on a street and was struck and injured by an uninsured car. This Court adopted the trial court's opinion upholding uninsured motorist benefits as well as first party benefits against SEPTA. In *Southeastern Pennsylvania Transp. Authority v. Dunham*, 668 A.2d 272 (Pa.Cmwlth.1995), we explained our reasoning in *Adeyward–I* stating that there was geographical and temporal proximity of the first SEPTA bus from which the passenger Adeyward exited to go to the second SEPTA bus which he intended to transfer en route home. We stated that Adeyward was still "vehicle rather than highway or sidewalk oriented" at the time he was injured. In applying the *Contrisciane* rationale, we found an unbroken causal connection and continuum between Adeyward's act of disembarking from the first vehicle and attempting to board the second vehicle, thereby rendering Adeyward still an "occupant" of SEPTA vehicles when injured.[2]

The majority reverses *Adeyward–I* finding that it is distinguishable from *Contrisciane* because Contrisciane had left his vehicle, planned on returning to the same vehicle, and had a legal duty to leave to cooperate with the police while Adeyward was not required to do so. However, planning on returning to the same vehicle or the reason that a person left the vehicle is not part of the *Contrisciane* test. Applying the *Contrisciane* test to the facts in this case:

(1) there is a causal relation or connection between the injury and the use of

---

**1.** Act of Feb. 12, 1984, P.L. 26, No. 11, *as amended*, 75 Pa.C.S. §§ 1701–1799.7 (the "MVFRL").

**2.** *See also Frain v. Keystone Insurance Company*, 433 Pa.Super. 462, 640 A.2d 1352 (1994) (holding that Mrs. Frain was "occupying" her friend's parked car when she stumbled over flowerbeds and sustained injuries to avoid being run over by oncoming tractor trailer before entering friend's car); *Fisher v. Harleysville Insurance Company*, 423 Pa.Super. 362, 621 A.2d 158 (1993), *allocator denied*, 536 Pa. 624, 637 A.2d 285 (1993) (minor was "occupant" of friend's truck while minor was unloading hunting rifle in front of truck in preparation to enter truck and was struck by oncoming vehicle).

the insured vehicle because Jones–Molina was crossing the street from one insured vehicle to another;

(2) there is no dispute there is a reasonably close geographic proximity to the insured vehicle;

(3) Jones–Molina was vehicle oriented rather than highway or sidewalk oriented at the time of the injury because she was crossing the street to get on the bus; and

(4) in crossing the street, Jones–Molina was engaged in a transaction essential to the use of the vehicle at the time.

Because *Adeyward–I* is an accurate application of *Contrisciane* and is indistinguishable from that case, I would affirm the trial court and hold that Jones–Molina is entitled to first party benefits under the MVFRL.

Accordingly, I respectfully dissent.