**LEHRER/McGOVERN, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SINCLAIR), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1998.

Decided Nov. 20, 1998.

Thy Nguyen, Philadelphia, for petitioner.

Linda De Gregorio, Bala Cynwyd, for respondent.

Before JIM FLAHERTY, J., BONNIE BRIGANCE LEADBETTER, J., SAMUEL L. RODGERS, Senior Judge.

RODGERS, Senior Judge.

Lehrer/McGovern (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a workers' compensation judge (WCJ) denying Employer's petition to terminate, modify, suspend or review compensation. The petition asserted a subrogation lien against a third party settlement received by Jerome Sinclair (Claimant). We affirm.

The following facts are not in dispute.[1] On April 20, 1988, Claimant, a construction worker, was working on the demolition of a building. A steel "gang box," approximately five feet, six inches high and weighing approximately three hundred pounds, was located directly behind Claimant.

A flatbed truck carrying a metal refuse container backed up and pulled into the loading area, stopping behind the gang box, approximately fifteen feet from Claimant. The flatbed truck was owned by Quick Way, Inc. and was operated by a Quick Way employee. The refuse container, used to collect trash at the site, measured approximately seventy feet long, eight feet wide, and six feet deep, and weighed approximately three tons. The container was attached to the truck by a cable, which extended from a winch on the

---

1. The parties filed a stipulation of facts, attached to the WCJ's decision as Exhibit B–1.

rear of the truck over a pulley; the cable clamped onto the end of the container by an "o-ring."

Using controls located within the truck, the driver raised the "bed" of the truck using the truck's hydraulic hoist and began to release the cable in order to lower the container to the ground. The container slid down the truck onto the asphalt and traveled about ten feet before colliding with the gang box. The gang box fell over onto Claimant, who sustained multiple injures. Claimant received temporary total disability benefits pursuant to a notice of compensation payable, and later received partial disability benefits following modification.

Claimant filed a civil action against Quick Way and other defendants, alleging, *inter alia*, negligent operation of the hoist and container and failure to maintain the flatbed truck, hoist and container. The case was settled for the amount of $700,000.00, which was paid entirely by Quick Way.[2]

Employer filed a petition seeking to exercise its subrogation rights as provided by Section 319 of the Workers' Compensation Act.[3] However, at the time of the work injury, Section 1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1720, precluded subrogation with respect to workers' compensation benefits for actions "arising out of the maintenance or use of a motor vehicle." This phrase is not defined by the MVFRL, and courts have previously looked to the now-repealed "No-fault Act"[4] for guidance in interpreting this provision.

Relying on *Alvarino v. Allstate Insurance Co.*, 370 Pa.Super. 563, 537 A.2d 18 (Pa.Super.1988), *Spisak v. Nationwide Mutual Insurance Co.*, 329 Pa.Super. 483, 478 A.2d 891 (Pa.Super.1984), and *Fox v. State Automobile Mutual Insurance Co.*, 314 Pa.Super. 559, 461 A.2d 299 (Pa.Super.1983), the WCJ found that Claimant's injuries arose directly from the maintenance and use of a motor vehicle, so that Section 1720 of the MVFRL barred Employer from exercising its right to subrogation. The Board affirmed.

On appeal to this Court,[5] Employer first argues that substantial evidence does not support the WCJ's findings that Claimant's injuries arose directly from the use of the flatbed truck. Employer asserts that the harm was caused by external sources, specifically, Quick Way's negligence in choosing an improper trash container and the driver's negligence in allowing slack to develop in the cable. Relying on *Lucas–Raso v. American Manufacturers Insurance Co.*, 441 Pa.Super. 161, 657 A.2d 1 (Pa.Super.1995), *appeal denied*, 542 Pa. 654, 668 A.2d 1119 (1995), Employer argues that the negligence of the truck's operator severed any causal connection that may have existed between the use of the flatbed truck and Claimant's injuries.

On its face, the argument that the negligent operation of a vehicle by its driver is unrelated to the use of that vehicle is flawed. Furthermore, each case cited by Employer in support of its argument is factually distinguishable from the present case. For example, in *Lucas–Raso*, the appellant, in the course of her employment, was walking toward the rear of her car, intending to enter it, when she fell in a hole in a parking lot. The court noted that, even if the appellant had established that she was, as a matter of law, an occupant of the vehicle, she had failed to establish a causal connection between her injuries and the maintenance and use of the vehicle.[6] Thus, the *Lucas–Raso* court held

---

2. Although Claimant owned a motor vehicle at the time of the accident he did not carry insurance nor did he apply for first party benefits.

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. 671.

4. The Pennsylvania No-fault Motor Vehicle Act, Act of July 19, 1974, P.L. 489, 40 P.S. §§ 1009.101–1009.701. Repealed by the Act of February 12, 1984, P.L. 26, effective October 1, 1984.

5. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (Pa.Cmwlth. 1988).

6. "Maintenance and use" is presumed if occupancy is shown. *Id.* Obviously, the question of occupancy is not relevant to our determination.

that the workers' compensation insurer was not precluded from asserting a subrogation lien against any recovery appellant received from a personal injury action filed against the defendant shopping center.[7]

Employer also argues that the WCJ's findings that use of the flatbed truck was the cause of Claimant's injuries reflect an impermissible, all-encompassing causation analysis. Here, Employer relies on *U.S. Underwriters Insurance Co. v. Liberty Mutual Insurance Co.*, 80 F.3d 90 (3d Cir.1996), which held that an individual who, while exiting his vehicle, slipped on grease from a nearby kitchen had not been injured as a result of the use of a motor vehicle. The court concluded that the vehicle was only tangentially related to the injuries and rejected an all-encompassing view of causation.

However, we conclude that the cases relied upon by the WCJ support his analysis of causation in this matter. In *Fox*, the issue presented was whether a plaintiff, who was injured in her home after tripping on debris scattered by a car that had crashed into her house, was entitled to No-fault benefits from her own insurance carrier. The determination in *Fox* turned on whether the plaintiff was a "victim" under the No-fault Act, i.e., whether her injury arose out of the maintenance and use of a vehicle. Following the Supreme Court's decision in *Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.*, 403 Pa. 603, 170 A.2d 571 (1961), the *Fox* court construed the words "arising out of," as used in an insurance policy, to mean "causally connected with" and not "proximately caused by."

In *Spisak*, the court held that occupants of a parked car who died of carbon monoxide poisoning while engaged in "compromising activities" were using the car as a "vehicle" (Section 103 of the No-fault act, 40 P.S. § 1009.103) and that the injuries arose out of the maintenance and use of a motor vehicle for purposes of the No-fault Act. The *Spisak* court rejected the argument that No-fault benefits were not available unless the vehicle is in motion and involved in a collision, finding it clear that the vehicle was the instrumentality that caused the harm.

Lastly, in *Alvarino*, the court was asked to determine the proper construction of Sections 1711 and 1712 of the MVFRL,[8] i.e., whether the injury to a vehicle's passenger caused by a dog bite arose from the use of the vehicle. The *Alvarino* court also relied on *Manufacturers Casualty*, noting its holding that "but for" causation is enough to satisfy the "arising out of the maintenance or use" provision of an insurance policy. The *Alvarino* court further noted that this construction had been extended to the No-fault Act's use of the same phrase. *See Schweitzer v. Aetna Life and Casualty Co.*, 306 Pa.Super. 300, 452 A.2d 735 (Pa.Super.1982); *Erie Insurance Exchange v. Eisenhuth*, 305 Pa.Super. 571, 451 A.2d 1024 (Pa.Super.1982).

Distinguishing *Spisak*, the *Alvarino* court found that no causal connection between the use of the vehicle and the injury, as the only involvement of the vehicle was that it was the situs of the dog bite. The court concluded that there was no language in the MVFRL eliminating the traditional requirement of "some causal connection" between the use of

---

7. Employer argued that the following cases also support its argument that Claimant's injuries were caused by a source external to the flatbed truck: *Smith v. United Services Automobile Association*, 392 Pa.Super. 248, 572 A.2d 785 (Pa.Super.1990), *appeal dismissed as improvidently granted*, 529 Pa. 24, 601 A.2d 276 (1992) (passenger on hay wagon threw hay at plaintiff, causing plaintiff to collide with a tree); *McKelvey v. Prudential Property*, 392 Pa.Super. 216, 572 A.2d 769 (Pa.Super.1990) (insured injured shoulder on door frame while rushing to his children after his house was struck by a car); *Roach v. Port Authority of Allegheny County*, 380 Pa.Super. 28, 550 A.2d 1346 (Pa.Super.1988) (passenger on bus injured as a result of fight between other

passengers); *Alvarino v. Allstate Insurance Co.*, 370 Pa.Super. 563, 537 A.2d 18 (Pa.Super.1988) (passenger bitten by dog in motor vehicle); *Dorohovich v. West American Insurance Co.*, 403 Pa.Super. 412, 589 A.2d 252 (Pa.Super.1991) (driver removing gas cans from parked car injured when gas station employee sprayed gas on her).

8. 75 Pa.C.S. §§ 1711 (Required benefits) and 1712 (Availability of benefits). Section 1712 requires insurers to make specific types of first party benefits available for purchase with respect to injury "arising out of the maintenance or use of a motor vehicle."

the vehicle and the injuries. *Id.* 537 A.2d at 22.

■ In its brief on appeal, Employer concedes that Claimant's injuries would not have occurred but for the conduct of the flatbed truck's operator. Thus, with regard to the narrow issue of causation, we reject Employer's argument that the operator's conduct is distinguishable from the use of the truck and conclude that the WCJ correctly applied the law in finding a causal relationship between the use of the truck and Claimant's injuries.

Employer next argues that, as a matter of law, Claimant's injury did not arise from the "use" of a vehicle, because Claimant was injured in the course of unloading the container. Employer relies on *Dull v. Employers Mutual Casualty Co.*, 278 Pa.Super. 569, 420 A.2d 688 (Pa.Super.1980). The *Dull* court held that an insured injured by a fall while unloading a boat from the roof of his car was not entitled to first party benefits, because acts of loading/unloading a vehicle were specifically excluded from the definition of "maintenance or use of a motor vehicle" by Section 103 of the No-fault Act, 40 P.S. § 1009.103.[9]

However, in *Omodio v. Aetna Life and Casualty*, 384 Pa.Super. 544, 559 A.2d 570 (Pa.Super.1989), the court interpreted the phrase "arising out of the maintenance or use of a motor vehicle" as contained in Section 1712 of the MVFRL. The appellee in *Omodio* was injured while standing inside and loading his truck, and his insurance policy excluded coverage for injuries sustained as a result of loading or unloading a motor vehicle. The *Omodio* court first observed that the appellee would have been entitled to coverage under the No-fault Act, because the appellee was occupying the vehicle when the injury occurred. The court opined that the drafters of the MVFRL, by deleting the definition of "maintenance or use" formerly included in the No-fault Act, did not intend to

entirely delete coverage of conduct involving the loading or unloading of a motor vehicle.

The *Omodio* court left unanswered the question of whether *all* persons injured in the course of loading/unloading would be entitled to coverage under the MVFRL. Instead, the court applied the definition of "maintenance and use" as set forth in the No-fault Act to determine that the carrier was required by the MVFRL to provide coverage, because the insured was injured while occupying the vehicle. Subsequently, in *Huber v. Erie Insurance Exchange*, 402 Pa.Super. 443, 587 A.2d 333 (Pa.Super.1991), the court held that the omission of the loading/unloading language from the MVFRL does not evidence a legislative intent that first party coverage be expanded to cover all loading/unloading injuries. The *Huber* court held that there must be "some causal connection between the motor vehicle and the injury" before an insurer can be required to pay first party benefits. *Id.* 587 A.2d at 334.

In the present case, Claimant was approximately 15 feet from the flatbed truck when he was injured. Since it is obvious that Claimant was not in the course of unloading the truck, the holding in *Dull* does not apply to *his* conduct. Moreover, the decision in *Dull* as applied to the driver's conduct does not preclude a finding that the injury arose from the "use" of a motor vehicle, because the driver of the truck was occupying the vehicle during the unloading process. As case law makes clear that the "use" of a vehicle does not need to be by the injured party, *Fox*, the WCJ's findings that the injury arose from the use of a vehicle is not in conflict with the holding in *Dull.*

Employer also argues that Claimant's injuries did not arise out of the maintenance or use of a vehicle because the flatbed truck was not being used "as a vehicle." Section 103 of the No-fault Act defined "maintenance or use of a motor vehicle" in pertinent part as

---

9. Section 103 of the No-fault Act provides in pertinent part that:
   Maintenance or use of a motor vehicle does not include:

   . . . .

   conduct in the course of loading or unloading a motor vehicle unless the conduct occurs while

occupying, entering into, or alighting from it. 40 P.S. § 1009.103.

"maintenance or use of a vehicle as a vehicle." 40 P.S. § 1009.103. However, as previously indicated, the MVFRL does not define this phrase and thus contains no similar requirement. Moreover, we again conclude that the cases cited by Employer are easily distinguishable from the facts presented here.

For instance, in *Crusco v. Insurance Company of North America*, 292 Pa.Super. 293, 437 A.2d 52 (Pa.Super.1981), the insured was injured by an explosion in her motor home. Gas had been leaking from the line to the refrigerator in the motor home and the explosion occurred when the insured lit her oven. The court looked to the definition of "vehicle" contained in Section 102 of the Motor Vehicle Code, 75 Pa.C.S. § 102 (a "device in, upon or by which any person or property is or may be transported. . . .") and concluded that the use of the refrigerator and oven was not a use as a device of transportation.

In *Quinn v. By–Pass Garage, Inc.*, 333 Pa.Super. 412, 482 A.2d 634 (Pa.Super.1984), the insured was injured when he fell while alighting from a pull-down bunk bed in his parked motor home. The court determined that, like the refrigerator and oven in *Crusco*, the bunk bed had been built into the camper to serve a function other than transportation, namely, as sleeping accommodations, and was actually being used for that purpose at the time of the injury. Therefore, the *Quinn* court held that the motor home was not being used as a vehicle and the insured was not entitled to benefits under the No-fault Act.

▪ Employer asserts that, like the refrigerator and oven in *Crusco* and the bunk bed in *Quinn*, the cable and the o-ring were built onto the flatbed truck to serve a function other than transportation. However, we conclude that the evidence of record supports the WCJ's finding that the unloading of the container was a use for which this vehicle was designed. (See photographs, Exhibit C–1, R.R. 65a, 66a, 68a.) At the time of the injury, the truck's operator was using controls located within the truck to raise the hoist and release the cable. The operation of the hoist and the winch constitutes an integral part of the flatbed truck's design and purpose. The operation of the flatbed truck's hoist and cable was not a function that can be logically construed as distinguishable from the use of the truck. Rather, the flatbed truck was being used for the very purpose of its existence.[10]

Employer's final argument is that Claimant's third-party complaint was based on a theory of products liability, so that the provisions of Section 1720 are not applicable to bar subrogation. We need not look to case law to dismiss this argument, as it is clear from the record that Claimant's action against Quick Way was based solely on allegations of negligence. (R.R. 75a.)

Because we conclude that the WCJ's findings are supported by substantial evidence and his decision contains no error of law, we affirm the order of the Board.

## ORDER

NOW, November 20, 1998, the order of the Workers' Compensation Appeal Board, at No. A95–4898, dated December 19, 1997, is affirmed.

LEADBETTER, J., dissents.

10. A vehicle need not be moving on the road in order for injury to occur during its "use." *Spi-sak; Fox.*