PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1664
_____

ALLSTATE PROPERTY AND CASUALTY INSURANCE
COMPANY

v.

LARRY G. SQUIRES
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 10-1458)
Honorable Joy Flowers Conti, District Judge

_____

Argued December 15, 2011

BEFORE:  SLOVITER, VANASKIE, and GREENBERG,
Circuit Judges

(Filed: January 26, 2012)

_____

R. Sean O'Connell (argued)
James A. Godwin
Robb Leonard Mulvihill, LLP
500 Grant Street
23rd Floor, BNY Mellon Center
Pittsburgh, PA 15219

   Attorneys for Appellee

Edward A. Shenderovich (argued)
Shenderovich, Shenderovich & Fishman
429 Fourth Avenue, Suite 1600
Pittsburgh, PA 15219

   Attorneys for Appellant

_____

OPINION OF THE COURT
_____

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I.     INTRODUCTION

After Larry Squires was injured in a motor vehicle accident, his automobile insurer Allstate Property and Casualty Insurance Company ("Allstate") filed an action in the District Court seeking a declaratory judgment that it was not obligated to pay uninsured motorist ("UM") benefits to Squires under his policy. Subsequently, in response to Allstate's motion, the Court granted it a judgment on the pleadings on March 2, 2011,

as it held that Squires's injuries did not "arise out of ownership, maintenance or use of an uninsured auto" as his policy required for Allstate to be liable to him for UM benefits. For the following reasons, we will reverse.


## II.    FACTS AND PROCEDURAL HISTORY

On October 20, 2008, Squires was driving his pickup truck on State Highway 51 in Beaver County, Pennsylvania when he was injured after swerving to avoid an approximately two-foot square cardboard box lying in the middle of his lane. The parties to this action are uncertain as to how the box came to be left on the road but, for purposes of its motion in the District Court, Allstate stipulated that an unidentified vehicle dropped the box.[1] Following the accident, Allstate, after rejecting Squires's claim for UM benefits, filed this action and Squires responded with counterclaims for breach of contract and insurance bad faith under 42 Pa. Cons. Stat. Ann. § 8371 (West 2007).[2] Allstate then moved for judgment on the pleadings and

---

[1] Squires has contended that another vehicle must have dropped the box because at the time of the accident he was traveling on a limited access highway with no adjacent sidewalks or other means of pedestrian access.

[2] Neither party contends that the matter in dispute should be resolved by way of the arbitration procedure for resolution of UM claims set forth in Squires's policy. See app. at 48.

3

for dismissal of the counterclaims.

Squires's policy provides, in relevant part:

[W]e [Allstate] will pay damages to an insured person [Squires] for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured auto. Bodily injury must be caused by accident and arise out of the ownership, maintenance, or use of an uninsured auto.

App. at 44. The policy's language tracks the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), which requires that insurers offer UM benefits in motor vehicle liability insurance policies.[3] The MVFRL provides for

---

[3] 75 Pa. Cons. Stat. Ann. § 1731(a) (West 2006) provides:

(a) Mandatory offering.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in [75 Pa. Cons. Stat. Ann.] section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

"uninsured motorist coverage" as follows:

> Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles.

75 Pa. Cons. Stat. Ann. § 1731(b) (West 2006). The MVFRL defines "uninsured motor vehicle" to include, inter alia:

> An unidentified motor vehicle that causes an accident resulting in injury provided the accident is reported to the police or proper governmental authority and the claimant notifies his insurer within 30 days, or as soon as practicable thereafter, that the claimant or his legal representative has a legal action arising out of the accident.

Id. § 1702.

Although Squires's insurance policy -- unlike the MVFRL-- does not include unidentified motor vehicles in its definition of "uninsured auto," see app. at 45, Allstate did not dispute -- and the District Court, quite reasonably in view of section 1702, assumed -- that the unidentified vehicle was an "uninsured motor vehicle" for purposes of the Court's coverage

5

analysis.[4]  Accordingly, the sole issue that the Court decided was "whether an accident caused by a box which fell from an uninsured motor vehicle can be attributed, as a matter of law, to the 'ownership, maintenance or use' of an automobile." App. at 5.  The Court answered this question in the negative, concluding that there is UM coverage for policies containing the "arising out of" language only when a vehicle -- and not some other object such as the box -- was "the instrumentality causing . . . the [a]ccident." App. at 11.  Accordingly, on March 2, 2011, the Court granted Allstate's motion for judgment on the pleadings, denied its motion to dismiss the counterclaims as moot, and dismissed Squires's counterclaims as moot.  Squires timely appealed.

---

[4] Though the District Court did not directly address the question of whether the policy's language or the MVFRL controlled its coverage analysis, in Pennsylvania "[i]nsurance contracts are presumed to have been made with reference to substantive law, including applicable statutes in force, and such laws enter into and form a part of the contractual obligation as if actually incorporated into the contract." Clairton City Sch. Dist. v. Mary, 541 A.2d 849, 851 (Pa. Commw. Ct. 1988) (citing First Nat'l Bank of Pa. v. Flanagan, 528 A.2d 134 (Pa. 1987)). Accordingly, we refer to both Squires's policy and the MVFRL in resolving this case.

III.     JURISDICTION AND STANDARD OF
REVIEW

The District Court had diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332.[5]   We have jurisdiction under 28 U.S.C. § 1291.   We exercise plenary review over the District Court's grant of Allstate's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).  See Ehrheart v. Verizon Wireless, 609 F.3d 590, 593 n.2 (3d Cir. 2010).   A court will grant a motion for judgment on the pleadings if the movant establishes that "there are no issues of material fact, and that he is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005) (citing Soc'y Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980)).   In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party.  See Allah v. Al-Hafeez, 226 F.3d 247, 249 (3d Cir. 2000).

---

[5] At oral argument, Squires's counsel tentatively represented that the limit of Squires's UM coverage was $50,000, a possibility that led us to question whether the District Court had diversity jurisdiction as it appeared that the case might not satisfy section 1332's requirement that the amount in controversy exceed $75,000.   However, after oral argument counsel for the parties advised us that Squires's insurance policy had a UM coverage limit exceeding $75,000.

## IV. DISCUSSION

The parties agree that Pennsylvania law governs our interpretation of Squires's policy and thus the extent to which it provides coverage, and therefore we apply Pennsylvania law on this appeal. Under Pennsylvania law,

> the interpretation of a contract of insurance is a matter of law for the courts to decide. In interpreting an insurance contract, we must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, we will give effect to the language of the contract.
>
> Paylor v. Hartford Ins. Co., 640 A.2d 1234, 1235 (Pa. 1994). However, where the policy language is ambiguous, it "is to be construed in favor of the insured and against the insurer, the drafter of the agreement." Dorohovich v. W. Am. Ins. Co., 589 A.2d 252, 256 (Pa. Super. Ct. 1991). In an insurance policy, "[w]ords of common usage . . . are to be construed in their natural, plain, and ordinary sense . . . and we may inform our understanding of these terms by considering their dictionary definitions." Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 108 (Pa. 1999) (citations omitted).

As the District Court recognized, the sole question in this case is whether under the policy and Pennsylvania law Squires's

8

accident should be regarded as having "[arisen] out of ownership, maintenance, or use of an uninsured auto." We note that to the extent "the state's highest court has not addressed the precise question presented, we must predict how [that] court would resolve the issue." Wayne Moving & Storage of N.J., Inc. v. Sch. Dist. of Phila., 625 F.3d 148, 154 (3d Cir. 2010) (alterations and citations omitted). In doing so,

> we must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue, as well as to analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.

Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 164 (3d Cir. 2011) (internal quotation marks and citations omitted). "Although not dispositive, decisions of state intermediate appellate courts should be accorded significant weight in the absence of an indication that the highest state court would rule otherwise." Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n.15 (3d Cir. 1996). Although Pennsylvania's intermediate appellate courts have not addressed a factual scenario similar to that presented here, their decisions provide significant guidance for us in answering the question that we address.[6]

---

[6] The cases we cite show that the question of whether an accident arose out of the "ownership, maintenance, or use" of a

We start, however, with the Pennsylvania Supreme Court case of <u>Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.</u>, 170 A.2d 571 (Pa. 1961), in which that court held that "[c]onstrued strictly against the insurer, 'arising out of' [in an insurance policy] means causally connected with, not proximately caused by. 'But for' causation, i.e. a cause and result relationship, is enough to satisfy this provision of the policy." <u>Id.</u> at 573. This formulation of "arising out of" is now well-settled in Pennsylvania, and has been applied in various insurance law settings, both when interpreting insurance policies and assessing issues arising by operation of statutes, even though some of the cases applying the formulation do not cite <u>Goodville</u>. <u>See, e.g.</u>, <u>Tuscarora Wayne Mut. Ins. Co. v. Kadlubosky</u>, 889 A.2d 557, 563 (Pa. Super. Ct. 2005) (assessing a commercial general liability insurance policy); <u>Roman Mosaic & Tile v. Aetna Cas. and Sur. Co.</u>, 704 A.2d 665, 669 (Pa. Super. Ct. 1997) (same); <u>Smith v. United Servs. Auto. Ass'n</u>, 572 A.2d 785, 787 (Pa. Super Ct. 1990) (applying the <u>Goodville</u> formulation to an uninsured motorist policy provision); <u>Erie Ins. Exch. v. Eisenhuth</u>, 451 A.2d 1024, 1025 (Pa. Super. Ct. 1982) (no-fault automobile insurance policy). Accordingly, Squires at this time only need have alleged adequately that the unidentified vehicle's use was a but-for cause of his injuries.[7]

---

motor vehicle come from numerous different factual situations and thus inevitably will be factually distinguishable.

[7] We are not implying that in order to recover on his UM coverage Squires will not be required ultimately to show that an uninsured vehicle proximately caused the accident. But at this

10

In making our analysis we are aware that Pennsylvania intermediate appellate courts quite broadly have indicated that if injuries are caused by "an instrumentality or external force other than the motor vehicle itself," the vehicle will not be regarded as having contributed to the cause of the injuries pursuant to the "arising out of" language. See Lucas-Raso v. Am. Mfrs. Ins. Co., 657 A.2d 1, 3 (Pa. Super. Ct. 1995). For example, in Lucas-Raso the Superior Court of Pennsylvania held in a workers' compensation subrogation action that an employee's injuries did not arise from the maintenance or use of a motor vehicle when the employee slipped in a snow-covered pothole as she was approaching her car. Accordingly, a provision of the MVFRL, 75 Pa. Cons. Stat. Ann. § 1720 (West 2006), that bars subrogation claims in cases "arising out of the maintenance or use of a motor vehicle" did not preclude the workers' compensation insurance carrier that had paid benefits to the employee from subrogating to the recovery on the employee's third-party claims for damages arising from the fall. Id. at 5. The court acknowledged that while the employee was "vehicle-oriented at the time of her fall, she has failed to establish the necessary nexus between her injury and the use of the . . . vehicle," observing that the employee had "offered no connection to link her fall to the use of her vehicle other than her claim that she was en route to enter it. The facts illustrate that it was not the act of entering her vehicle which caused [the] fall, and there was no other vehicle involved to break the chain of entry." Id.

stage of this case he only need satisfy the requirement to plead facts that could support a conclusion that the unidentified vehicle was a but-for cause of the accident.

11

The Superior Court employed reasoning similar to that of Lucas-Raso in Smith v. United Services Automobile Ass'n, 572 A.2d 785, a case on which the District Court in this case heavily relied. In Smith a boy was riding his bicycle on a road as a tractor pulling a hay wagon passed by him. As the vehicles were passing, a boy riding in the wagon threw hay in the bicycle rider's face, causing him to crash into a tree and suffer serious injuries. Smith and his parents sued their automobile liability insurer seeking uninsured motorist coverage, but the court held that the injuries were not caused by a vehicle, but rather by the "intentional act of a third party, [i.e.] the passenger, throwing hay."[8] Id. at 787. Accordingly, the court held that "[b]ecause we are unable to discern any causal connection between the vehicle and the injury, the injury cannot be said to arise from the ownership, maintenance, or use of the vehicle," and therefore the plaintiffs were not entitled to uninsured motorist benefits under their policy. Id.

Relying on Smith, the District Court rejected Squires's claim for coverage as it concluded that "the determinative fact is that the instrumentality causing the Underlying Accident was a box -- not a vehicle."[9] App. at 11. We think, however, that Smith is distinguishable from this case, and, when faced with a set of facts similar to those here, the Pennsylvania Supreme Court would hold that Squires's accident arose "out of the

---

[8] During the time that the hay wagon was on the road it was regarded as an uninsured vehicle.

[9] The District Court also cited two not precedential opinions but we do not discuss them as we afford them no weight.

12

ownership, maintenance, or use of an uninsured auto." As Squires points out, Smith concerned the intentional intervening act of a third party: a person throwing hay from the back of a vehicle. Hence, in line with Goodville's emphasis on causation in fact, the Smith court held that "it is clear that the injury was not caused by the vehicle, but by the boy intentionally throwing hay in Smith's face." Smith, 572 A.2d at 787. The court noted that it had "interpreted the phrase 'maintenance and use of a motor vehicle' to mean the 'maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it[.]" Id. (quoting Camacho v. Nationwide Ins. Co., 460 A.2d 353, 354 (Pa. Super. Ct. 1983)) (emphasis in original). In Squires's case, in contrast to the incidental involvement of the vehicle in the boy's injury in Smith, we will infer that the unidentified vehicle directly was involved in the accident as it was transporting the box as cargo -- a common use for many types of vehicles traveling on a roadway. See 75 Pa. Cons. Stat. Ann. § 102 (West 2006) (Motor Vehicle Code definitions section defining "vehicle" as "[e]very device in, upon or by which any person or property is or may be transported . . . .") (emphasis added). Thus, when the unidentified vehicle dropped the cardboard box, it had more than an "incidental involvement . . . in the situation that gave rise to [Squires's] injuries." See Alvarino v. Allstate Ins. Co., 537 A.2d 18, 21 (Pa. Super. Ct. 1988).[10] Rather, the accident was a direct consequence of the

---

[10] Squires's case would have been indistinguishable from Smith if in Smith the hay had been insufficiently secured while being transported and consequently flew off the wagon and hit the bicycle rider. In that situation the nexus between the "use" of

13

use of the vehicle for its intended purpose, for as is sometimes said in another context, things "fall off the truck."

We have examined the four cases on which Smith principally relied but find them to be easily distinguishable from this case as they all concerned intervening actions in situations in which the injuries sustained were not attributable to common uses of a vehicle. See Roach v. Port Auth. of Allegheny Cnty., 550 A.2d 1346, 1350 (Pa. Super. Ct. 1988) (holding that a bus passenger who was injured as a result of a fight between two other passengers did not "establish the requisite causal connection between the 'maintenance and use of a motor vehicle' and the injuries"); Alvarino, 537 A.2d at 21 (holding that a passenger who was bitten by a dog chained inside a van did not suffer injuries arising out of the maintenance or use of a motor vehicle, because the motor vehicle was merely "the place where injuries [were] sustained"); Camacho, 460 A.2d at 354 (holding that injuries sustained by driver sitting in car caused by an explosive device that was thrown from another vehicle did not arise out of the use of the other vehicle); Schweitzer v. Aetna Life and Cas. Co., 452 A.2d 735, 738-39 (Pa. Super. Ct. 1982) (denying coverage for a claimant who was pulled from her vehicle and assaulted, because neither she nor her assailant was "acting in the role of motorist," and "an assault by an armed assailant upon the driver of a car [is not] the type of conduct that is reasonably identifiable with the use of a car") (internal quotation marks and citation omitted); see also Ohio Cas. Grp. of Ins. Cos. v. Bakaric, 513 A.2d 462, 465 (Pa. Super. Ct. 1986)

the wagon and the accident would have been much stronger than it actually was in Smith.

(refusing to interpret an incident where a husband shot his wife in the face in the front seat of a car as one arising from the use of a motor vehicle); Eisenhuth, 451 A.2d at 1025 (holding that injuries suffered by a vehicle passenger as the result of a gunshot did not satisfy Goodville's causation-based standard for "arising out of"); Day v. State Farm Mut. Ins. Co., 396 A.2d 3, 5 (Pa. Super. Ct. 1978) (holding that injuries sustained in a post-collision fistfight between two drivers did not arise out of the ownership, maintenance, or use of a vehicle for purposes of assessing uninsured motorist coverage).

In support of its position, Allstate points to our decision in U.S. Underwriters Insurance Co. v. Liberty Mutual Insurance Co., 80 F.3d 90 (3d Cir. 1996). In U.S. Underwriters, Robert Hipl parked his car at a nursing home in preparation for a business meeting. As he exited his vehicle, Hipl slipped on grease that had come from the nursing home's kitchen and then coated a section of the parking lot. Id. at 92. In the process, he struck his back on the car's door and was injured. Id. After Hipl's employer's workers' compensation carrier paid him benefits, it asserted that it had acquired a subrogation lien on the proceeds of a third-party action Hipl brought against the nursing home and other defendants. Id. Following the settlement of the third-party action, the third-party defendants' insurers sought to invalidate the lien under the provision of the MVFRL involved in Lucas-Raso that bars a workers' compensation insurer's right of subrogation to recover benefits from an insured's tort recovery if the injuries "arose from the maintenance or use of a motor vehicle." Id. We applied Goodville's "but-for" formulation of "arising out of," but, noting that "every incidental factor that arguably contributes to an accident is not a 'but for'

15

cause in the legal sense," see Berry v. Sugar Notch Borough, 43 A. 240, 240 (Pa. 1899), we cited Smith and several similar intermediate appellate court cases and concluded that a Pennsylvania court would not hold that Hipl's injuries "arose out of" the use of his car based on the particular facts of the case. Id. at 94-95.

U.S. Underwriters clearly is distinguishable from this case. We first observe that while, as here, something physically external to a vehicle caused the injuries in U.S. Underwriters as the grease that directly caused Hipl to fall emanated from a nearby building, the procedural posture of our case requires us to consider that the cardboard box that caused the accident was dropped on the road by an unidentified and thus uninsured vehicle. Consequently, there is a stronger factual causal connection here between the injuries sustained and the "ownership, maintenance, or use" of an automobile than the connection between the injuries and the vehicle in U.S. Underwriters. In U.S. Underwriters we recognized how attenuated the causal connection was between the injury and the vehicle for in reaching our result we relied on the analogous case of Lucas-Raso, which reasoned:

> Presently, appellant, who intended to enter her automobile, claims she stumbled after stepping into a snow-covered pothole and was injured as a result. She has failed to show how her vehicle contributed to her fall. Clearly, if appellant had encountered the same snow-covered pothole in a different location in the parking lot, this case would not be before us. Appellant has offered no

16

> connection to link her fall to the use of her vehicle other than her claim that she was en route to enter it. The facts illustrate that it was not the act of entering her vehicle which caused appellant's fall, and there was no other vehicle involved to break the chain of entry.

Lucas-Raso, 657 A.2d at 5. Although Hipl, unlike the injured party in Lucas-Raso, struck his vehicle rather than the ground when he fell, a vehicle did not cause the fall. Thus, though the vehicle involved in U.S. Underwriters was the situs of the injury, its presence was not instrumental in the fall. Significantly, in U.S. Underwriters we examined "Pennsylvania cases demontrat[ing] that the Commonwealth's understanding of 'use of a motor vehicle' . . . will not encompass the causal nexus at issue here," 80 F.3d at 94, citing Smith, Roach, Alvarino, Camacho, Schweitzer, and Eisenhuth, which as we have mentioned were all cases where the presence of a vehicle was merely incidental to the conditions that caused the injuries at issue. See id. at 94-95.

As the Supreme Court of Pennsylvania set forth in Goodville, the central inquiry in assessing whether an incident "arose out of the maintenance, ownership, or use" of a motor vehicle concerns causation, which is informed by -- but does not necessarily turn on -- the "instrumentality" directly causing the accident. Thus, the Pennsylvania intermediate appellate court decisions that have indicated that if "an instrumentality or external force other than the motor vehicle itself" caused the accident the vehicle will not be regarded as having contributed to its cause may not have precisely applied the Goodville

17

formulation. In fact, we think that while the identification of the object that directly caused an accident surely is relevant in a causation analysis, it is not dispositive and does not foreclose the possibility that the accident arose out of the use of a motor vehicle. In this regard, we point out that there may be two or even more causes of an accident. Lehrer/McGovern v. Workers' Compensation Appeal Board, 720 A.2d 853 (Pa. Commw. Ct. 1998), is an example of a case in which there was a confluence of an external object and a vehicle that caused an accident. In that case a construction worker was injured when a metal refuse container slid off of a nearby flatbed truck and traveled about ten feet before hitting a large steel box that struck the worker. Id. at 853-54. The worker filed a third-party action against the truck owner, and after the parties settled that action, his employer, who had paid its employee workers' compensation benefits, filed a subrogation action seeking to make a recovery from the employee's proceeds from the third-party action. Id. at 854. However, as we already have noted in our discussions of Lucas-Raso and U.S. Underwriters, a provision of the MVFRL precludes an employer or insurance company that has paid workers' compensation benefits from subrogating to the recovery from a third-party action "arising out of the maintenance or use of a motor vehicle." In affirming the Workers' Compensation Appeal Board, which rejected the employer's claim, the Commonwealth Court held that the worker's injuries arose from the maintenance or use of a motor vehicle, and barred the employer from subrogating to the recovery in the third-party action, despite the circumstance as germane here that an object other than the vehicle itself struck the worker. Id. at 856.

18

In a case similar to Lehrer/McGovern insofar as that case involves an issue comparable to the issue here, the court in Fox v. State Automobile Mutual Insurance Co., 461 A.2d 299 (Pa. Super. Ct. 1983), faced a situation involving a plaintiff who was injured after tripping over debris left when a car suddenly crashed into her living room. In deciding that the plaintiff qualified as a "victim" under an insurance policy issued pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Act, the court determined that the causal connection between the vehicle and the plaintiff's injuries was strong enough to support a conclusion that the accident "arose out of" the maintenance and use of the vehicle. Id. at 302. Lehrer/McGovern and Fox, cases that in our view describe cause-and-result relationships which, if anything, were more attenuated than the causal connection between the use of a vehicle and the accident here, demonstrate that physical contact with an uninsured vehicle is not required for an accident to "arise out of" the use of an uninsured vehicle, and that, depending on the facts of the case, some less direct causal relationship sometimes will suffice. Accepting for purposes of this appeal that the unidentified vehicle that dropped the box on the highway was an "uninsured" vehicle, there is a sufficient causal connection for us to determine that Squires's injuries "arose out of" the use of a vehicle under his insurance policy.

We finally note that "the MVFRL is to be liberally construed in order to afford the greatest possible coverage to injured claimants" and "[i]n close or doubtful insurance cases, a court should resolve the meaning of insurance policy provisions or legislative intent in favor of coverage for the insured." Houston v. SEPTA, 19 A.3d 6, 14 (Pa. Commw. Ct. 2011)

19

(citing 1 Pa. Cons. Stat. Ann. § 1928(c) (West 1998) (stating with exceptions inapplicable here that statutes "shall be liberally construed to effect their objects and promote justice")); <u>Motley v. State Farm Mut. Auto. Ins. Co.</u>, 466 A.2d 609, 611 (Pa. 1983)). Thus, even though we recognize that this case is close, we think that the Pennsylvania Supreme Court would reach the result that we reach.[11]

## V. CONCLUSION

For the foregoing reasons, we hold that in light of Allstate's concession for purposes of its motion for judgment on the pleadings that the accident was caused by a box dropped from an unidentified vehicle, Squires's accident "ar[ose] out of the maintenance, ownership, or use" of an uninsured vehicle

---

[11] We emphasize how narrow our opinion is. After all, we have decided this case on the basis of an assumed set of facts and it is entirely possible that in further proceedings whether in court or in an arbitration case the facts may appear to be quite different. Moreover, though we are reinstating Squires's counterclaims we are not suggesting that in this close case we see any merit in Squires's bad faith counterclaim. Rather, we express no opinion on that issue as it is not before us for adjudication. We note, however, that our experience in addressing Pennsylvania insurance coverage disputes has demonstrated that insureds tend to bring bad faith claims when insurers reject their claims even though there are legitimate disputes over whether the claims are covered.

20

under his insurance policy. We therefore will reverse the District Court's order of March 2, 2011, granting Allstate's motion for judgment on the pleadings and dismissing Squires's counterclaims and will remand the case to the District Court for further proceedings.